UNITED STATES of America,
Plaintiff–Appellee,

v.

Mustafa Mohamed SALAMA,
Defendant–Appellant.

No. 91–5200.

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1992.

Decided Sept. 3, 1992.

David Paul King, Hogan & Hartson, Baltimore, Md., argued (John B. Howard, Jr., on brief), for defendant-appellant.

Maury S. Epner, Asst. U.S. Atty., Baltimore, Md., argued (Richard D. Bennett, U.S. Atty., on brief), for plaintiff-appellee.

Before WILKINSON and NIEMEYER, Circuit Judges, and STAMP, District Judge for the Northern District of West Virginia, sitting by designation.

## OPINION

PER CURIAM:

Mustafa Mohamed Salama pled guilty under a plea agreement to one count of counterfeiting currency in violation of 18 U.S.C. § 474. The district court sentenced him to 27 months imprisonment and a fine of $25,000.

Appealing his sentence, Salama contends principally that the district court's findings that the criminal activity involved five participants and that Salama was "an organizer or leader" were tainted by the sentencing judge's views of Salama's alien status in this country and of the Sentencing Guidelines. Salama also contends that the amount of the fine is not justified by the record.

After carefully reviewing Salama's well-presented arguments and the record, we affirm.

## I

Salama was a member of a group that agreed to produce counterfeit United States currency in a small row house on East Lombard Street in Baltimore. Pursuing that effort, which extended from March to July 1991, Salama obtained money by wire from Saudi Arabia to purchase $15,-000 worth of printing equipment and supplies, leased the house on East Lombard Street, and participated in preparing photographs and plates depicting United States currency. He worked with Richard Gore, an experienced counterfeiter, who was teaching Salama the counterfeiting process. Salama brought three other friends into the group, Mohamed Aly Mohamed, Mohamed Sedky Mohamed, and Estelle Wienecke.

When the first arrangements were made by Salama to purchase printing equipment and supplies, the United States Secret Service was alerted and it obtained a warrant authorizing the surreptitious installation of video cameras inside the Lombard Street row house where the printing equipment had been installed. For the next six weeks, investigating agents observed Salama at the premises virtually every day and usually joined by one or more of his co-defendants, but not Estelle Wienecke. Richard Gore was at the location approximately half the time and at least one of the other two co-defendants was present about 20% of the time. Salama retained the keys for the premises, opening them in the morning and closing them at night, and he controlled the negatives and plates that were being produced under the tutelage of Gore. Estelle Wienecke, who was a former employee of Salama, assisted only in procuring green ink (matching the color of the serial numbers on United States currency) and in contributing $3,000 in funds to the enterprise.

On July 1, 1991, the grand jury indicted Salama, Gore, Mohamed Aly Mohamed, and Mohamed Sedky Mohamed in six counts, and it indicted Wienecke in one conspiracy count.* In accordance with a plea agreement, Salama pled guilty to one count and was sentenced to 27 months imprisonment and fined $25,000. In sentencing Salama, the district court enhanced his offense level by four levels under U.S.S.G. § 3B1.1(a), finding that Salama was an organizer or leader of a criminal activity consisting of five or more participants.

## II

Salama contends that the district court based its findings that Salama was an organizer or leader of a criminal activity involving five persons on "the thinnest of evidence" and that the court's consideration of Salama's alien status (he is an Egyptian citizen) and the judge's personal view that the Sentencing Guidelines established a punishment that was inadequate for the offense prompted the court improperly to find against him on these issues, leading to a four-step offense level adjustment. *See* U.S.S.G. § 3B1.1(a). As the result, Salama's sentence was increased by 12 months. Salama contends that Gore, who was the only member of the group who knew how to counterfeit currency, was in reality the leader and that Wienecke was not part of the enterprise.

During sentencing the district judge stated:

*These are people who designedly try to steal from our country* in a way that probably works, that is probably very, very effective in order to enrich themselves, and I find that Mr. Salama was the main organizer.

He was the money man. He was the person who put it together.

*He was a guest in this country* and I presume he got a lot out of this country, as we all do, and many of us or most of us get a lot from this country and put a lot back into it, so I find it was a deliberate attempt to steal from this country in

---

* Apparently, Mohamed Aly Mohamed is now a fugitive; Mohamed Sedky Mohamed pled guilty to one count and received a six-month term of imprisonment; Richard Gore's trial has been indefinitely postponed; and the charge against Estelle Wienecke was dismissed by the government after the petit jury was unable to reach a verdict. Brief for Appellant at 1 n. 1.

a way that is really stealing from all of us.

(Emphasis added.) Commenting on the Sentencing Guidelines, the court stated:

I guess there is a lot of things that trouble me about the Guidelines. One thing about the Guidelines is when you see a situation like this, in which *I find myself shocked that the Guideline level is as low as it is.*

This is a major crime.

(Emphasis added.)

Salama relies on the decisions in *United States v. Borrero–Isaza,* 887 F.2d 1349 (9th Cir.1989) (remanding the case for resentencing because the court believed that the district court "partially based the sentence on Borrero's national origin"), and *United States v. Gomez,* 797 F.2d 417 (7th Cir. 1986) (stating that it "obviously would be unconstitutional" for a defendant to be sentenced more harshly on the basis of nationality or alien status), to contend that alienage is an improper consideration in sentencing, and on our decision in *United States v. Bakker,* 925 F.2d 728 (4th Cir. 1991) (remanding the case for resentencing because the district judge stated that the defendant "had no thought whatever about his victims and those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests"), to contend that the personal views of the sentencing judge have no proper role in sentencing.

■ The government notes that substantial evidence supports the district court's findings in this case and contends that any comment by the court did not motivate the court in passing sentence. The court sentenced Salama at the middle of the sentencing range given by the Sentencing Guidelines. Moreover, the district court sentenced Salama's co-defendant, also an Egyptian citizen, to six months in a halfway house, departing downward over the government's objection.

■ When the record as a whole is considered, we agree that any impropriety of the district court's remarks did not infect the sentence. The district court was particularly affected by the diligence and hard work with which Salama pursued the counterfeiting enterprise, as was clearly depicted by the videotapes. While co-defendant Gore was the most experienced counterfeiter in the group and was attempting to teach Salama and the others how to counterfeit currency, there can be little doubt that Salama was an organizer *and* leader. He secured the location for the counterfeiting enterprise, he secured the money for the printing equipment and accessories, and he retained the keys to the row house, opening it in the morning and closing it at night. Only he was present at the premises, with various of the co-defendants, virtually every day.

That five persons were involved in the counterfeiting operation is also well substantiated. In addition to Salama, there were the three co-defendants on the premises regularly, working the printing presses and learning the trade, Richard Gore, Mohamed Aly Mohamed, and Mohamed Sedky Mohamed. The only dispute arises about whether Estelle Wienecke was also a participant. While the extent of her involvement is much less, there is undisputed evidence of her participation. She called an ink company, using an alias to arrange the pickup of green ink that matched the color used for the serial numbers on United States currency, and actually picked up the ink, signing a receipt on which she again used an alias. She also contributed money to the enterprise.

The court's findings are thus adequately supported by the evidence and are not clearly erroneous. They lead inevitably to the Sentencing Guideline range applied by the court. While we do not approve of the irrelevant remarks introduced by the sentencing judge into the proceedings—indeed, we consider them to be inappropriate—we conclude that they did not in this case become an improper factor in sentencing and were therefore harmless error. The sentence was fully supported by the facts and the Sentencing Guidelines. Moreover, the district judge's selection of a sentence from the middle of the sentencing range and his especially lenient sentence of another alien in the case support our conclusion.

Had the judge been motivated by his remark that he was shocked by the leniency of the sentences established by the Guidelines, he would certainly have sentenced Salama at the higher end of the range. And if he had sentenced harshly because of alienage, he undoubtedly would not have departed downward, over objection, in sentencing Salama's colleague, who was also an alien. We therefore reject the claim that Salama's sentence was based on improper considerations.

### III

Salama also contends that the imposition of the $25,000 fine violated the directives of 18 U.S.C. § 3572(a) (listing factors to be considered in imposing a fine). More particularly, Salama argues that the district court failed to find sufficient facts to support the finding that he had adequate assets to pay a $25,000 fine.

In imposing the fine, the district court concluded:

> With regard to a fine, the presentence report shows that you have no assets. I have to find that you do have assets.

> I believe that you had access to $15,-000 from Saudi Arabia in order to get into this criminal venture. I understand that you had a partnership interest in an enterprise in Ecuador in which presumably assets or money is owed to you.

> I have doubts that any fine is collectable, but I think the guideline range is from five to fifty thousand dollars. I think that it is appropriate in this case, taking into account the costs expended by this government in investigating this case, to impose a fine of 25 thousand dollars.

While Salama disputes the adequacy of these findings because they were not specific, he does not dispute the truth of the facts as found. And when considered in the context of the overall criminal activity, the findings are not clearly erroneous. Salama had some substantial means, as revealed by his ability to raise the money to finance the counterfeiting enterprise, which tends to corroborate the indefinite evidence of substantial assets both in Saudi Arabia and in Ecuador. While it is true that the district court expressed doubt about the government's ability to reach these funds, once the government demonstrates that the defendant has access to the funds, we do not believe that questions regarding the difficulty in collecting a fine pose a sufficient challenge to whether a fine is appropriate in amount.

Accordingly, for the reasons stated, the sentence of the district court in this case is affirmed.

AFFIRMED.