**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 9, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JERRY TRAXLER,

    Defendant-Appellant.

No. 05-2370

(D. of N.M.)

(D.C. No. CR-05-144-B)

_____

**ORDER**

Filed April 9, 2007

_____

Before **BRISCOE**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

_____

This matter is before the court on Appellant Traxler's petition for rehearing en banc, or in the alternative, for panel rehearing of the opinion issued March 1, 2007 in United States v. Traxler and United States v. Denning, 05-2370 and 06-2179, respectively. The petition for rehearing en banc was circulated to all judges of the court who are in regular active service. As no judge in regular active service requested that the court be polled, the petition for rehearing en banc is denied. The petition, in the alternative, for panel rehearing, is also denied.

The panel shall, however, amend the opinion *sua sponte* at Section II. B.3

as noted.  A copy of the amended opinion is attached to this order.


Entered for the Court:

Timothy M. Tymkovich
Circuit Judge

F I L E D
United States Court of Appeals
Tenth Circuit

March 1, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JERRY TRAXLER,

Defendant-Appellant.

No. 05-2370

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DENNIS DENNING,

Defendant-Appellant.

No. 06-2179

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR-05-144-RB)

Jill M. Wichlens, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs) Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant Jerry Traxler in Case No. 05-2370.

Howard L. Anderson, Fairacres, New Mexico, for Defendant-Appellant Dennis Denning in Case No. 06-2179.

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief) Office of the United States Attorney,

Albuquerque, New Mexico, for Plaintiff-Appellee in Case Nos. 05-2370 and 06-2179.

_____

Before **BRISCOE**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

Defendants-Appellants Jerry Traxler and Dennis Denning were convicted of conspiracy to possess methamphetamine with the intent to distribute. Denning was also convicted of possession with intent to distribute. Both Traxler and Denning appeal the district court's denial of their motion to suppress evidence recovered from their vehicles when they were arrested outside Las Cruces, New Mexico. For the reasons articulated below, we find that officers had probable cause to arrest Traxler and Denning when they stopped the cars, so the evidence was properly admitted.

In addition, Traxler appeals his sentence, arguing that (1) comments by the sentencing judge referring to the Apostle Paul impermissibly injected religion into the sentencing process, violating his due process rights protected by the Fifth Amendment; (2) his sentence is contrary to *United States v. Sanchez-Juarez*, 446 F.3d 1109 (10th Cir. 2006), because the court failed to explain its application of the sentencing factors set forth in 18 U.S.C. § 3553(a); and (3) his sentence is otherwise unreasonable. We find no due process violation and affirm the sentence.

## I. Background

On October 28, 2004, Eric Hansen, a Drug Enforcement Administration Agent in Las Cruces, New Mexico, received a call from another DEA Agent in Midland, Texas. This agent reported that a reliable confidential informant had provided information about an imminent methamphetamine transaction. The informant explained in great detail that Jerry Traxler and Adam Ladue were planning to buy a quantity of methamphetamine from an Arizona-based dealer named Dennis in Mayhill, New Mexico. The informant said Traxler and Ladue would be driving a black Ford Ranger pickup[1] and the two had left Midland that morning at 8:30. The Midland agent was aware that the informant had previously provided "usable" information to the DEA and local police. Vol. V at 12:3.

Hansen and others responded to this tip by setting up surveillance in Mayhill. The officers spotted a Ford Ranger pickup truck carrying two men matching the descriptions of Traxler and Ladue as it entered Mayhill. They followed the truck through Mayhill to Cloudcroft, New Mexico, twenty miles to the west.

The truck drove around Cloudcroft for about two hours, going down side streets and through parking lots. Hansen later testified the truck was performing

---

[1] Hansen testified at the suppression hearing that the informant told Midland police Traxler would be driving a black truck. At the hearing, Hansen never testified to the color of the truck he spotted in New Mexico. It is clear from the trial record that the truck was white, not black as the informant suggested.

"heat runs," which he described as a tactic familiar to law enforcement involving erratic and spontaneous maneuvers meant to determine whether a vehicle was being followed. The truck left Cloudcroft and proceeded to Alamogordo, New Mexico, where officers from Midland participating in the surveillance positively identified Traxler and Ladue. The two rented a motel room for the night and took the truck out on more late-night "heat runs" in Alamogordo.

Also during the night of October 28, the informant provided supplemental information that the man from Arizona was still en route with the methamphetamine, although plans had changed. The informant said he knew this because Traxler and Ladue had called to tell him the deal would still take place, though he could provide no further details.

On the morning of October 29, Traxler and Ladue left Alamogordo and drove to Las Cruces. In Las Cruces, Traxler and Ladue again drove haphazardly around the town before eventually meeting a green car with Arizona licence plates in a parking lot. A check on the plates established the car was registered to a Dennis Denning.

When the truck and car left the parking lot, several unmarked police vehicles followed. The truck and car followed a road to a more rural area, where they each made a sudden U-turn. This forced the surveillance vehicles to do the same, compromising the operation. The officers decided to stop both cars and ordered the occupants out at gunpoint.

Dennis Denning was driving the green car.  He admitted he was in Las Cruces to sell nine or ten ounces of methamphetamine to Traxler and Ladue for $5,000.  From Denning's car, officers recovered methamphetamine and an envelope on which was written the name and room number of Traxler and Ladue's Alamogordo motel.  From Traxler's truck, officers recovered $4,990 from the false bottom of an aerosol can.

Traxler, Denning, and Ladue were charged with conspiracy to possess with intent to distribute more than fifty grams of methamphetamine.  Denning was also charged with possession with intent to distribute more than fifty grams of methamphetamine.  Ladue pleaded guilty and agreed to testify against the others at trial.

Prior to trial, Denning filed a motion, which Traxler joined, to suppress the evidence recovered from the two vehicles.  The district court conducted a hearing on the motion at which the only witness was DEA Agent Hansen.  Traxler and Denning argued law enforcement officers had neither reasonable suspicion nor probable cause to stop Denning, Traxler, and Ladue on the basis of the confidential informant's tip and police observations.

The district court denied the motion, analyzing the stop under *Terry v. Ohio*, 392 U.S. 1 (1968).[2]  The court concluded that the informant's tip combined

---

[2]  The district court's order created some confusion as to when the arrest in this case occurred.  In the order denying the motion to suppress, the court stated, "The
(continued...)

with the evasive maneuvers of the vehicles in Las Cruces provided reasonable suspicion for the stop. The court held probable cause to arrest arose once Denning admitted the purpose of his trip. The evidence was admitted at trial, and a jury convicted both Traxler and Denning.

## II. Analysis

Denning and Traxler both contest the district court's denial of their motion to suppress. Traxler additionally claims error with respect to three sentencing issues. We address each argument in turn.

### A. Denning and Traxler's Motion to Suppress

When reviewing a district court's denial of a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous and view the evidence in the light most favorable to the government. *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). Nevertheless, Fourth Amendment reasonableness is a question of law, so we review de novo the district court's determination of reasonable suspicion and probable cause. *Id.*

---

[2](...continued)
agents jumped out of their vehicles with guns drawn, stopped the Traxler/Ladue truck and the green car, and *arrested* the suspects at gun point." Vol. I, Doc. 58 at 3 (emphasis added). The court nevertheless went on to analyze the stop not as an arrest but as an investigatory detention under *Terry*. *Id.* at 6. Our conclusion that the officers had probable cause to arrest when they stopped the cars renders the confusion in terms inconsequential. Although it is obvious the district court believed the stop was merely an investigative detention, we are willing to assume Traxler and Denning were arrested for Fourth Amendment purposes the moment officers stopped their cars at gunpoint.

The Fourth Amendment prohibits unreasonable searches and seizures. To be reasonable under the Fourth Amendment, an arrest must be supported by probable cause. *Cortez v. McCauley*, — F.3d —, No. 04-2062, 2007 WL 503819 (10th Cir., Feb. 16, 2007). Officers may, however, make an investigatory stop short of arrest based on a reasonable suspicion that a crime is afoot. *Id.* (relying on *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000)). Traxler and Denning argued law enforcement officers violated the Fourth Amendment when they stopped their cars for two alternative reasons: (1) the stop was an arrest for which law enforcement lacked probable cause, or (2) the stop was an investigatory detention for which law enforcement lacked reasonable suspicion. We reject both arguments because we conclude law enforcement officers had probable cause to arrest Traxler and Denning when they stopped the two cars.

Probable cause exists when under the totality of the circumstances there is a reasonable probability that a crime is being committed. *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999). The "'totality of the circumstances' test does not depend on whether any particular factor is innocent when considered in isolation, but on whether, taken as a whole, the facts observed by the law enforcement officers indicate a fair probability" of criminal activity. *United States v. Concepcion-Ledesma*, 447 F.3d 1307, 1316 (10th Cir. 2006). "Even where a particular factor, considered in isolation, is of 'limited significance' . . . , it nonetheless may affect the Fourth Amendment analysis when combined with

other indicia of probable cause or reasonable suspicion." *Id.* (quoting *United States v. Johnson*, 364 F.3d 1185, 1192 (10th Cir. 2004)). "[N]o single factor is determinative, and we view the circumstances in their totality rather than individually." *Id.* (quoting *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004)).

A confidential informant's tip can factor into the totality of the circumstances supporting probable cause when the tip is corroborated by officers' investigations. *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004). For example, in *Artez* we found probable cause when police observed that several consecutive visitors to a residence each stayed only for a short period of time, which corroborated an informant's tip that drug transactions were occurring. Under the totality of the circumstances test, any deficiency in one aspect of an informant's tip may be compensated for by other indicia of reliability. *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 233 (1983)).

Officers in this case had probable cause to conclude a crime was being committed. First of all, a number of facts corroborated the material aspects of the informant's tip, including (1) the arrival in New Mexico of Traxler and Ladue, (2) the make and model of their pickup truck, and (3) the rendezvous with a car registered in Arizona to a man named Dennis. Law enforcement was in contemporaneous communication with the informant, who told them the transaction was still "on" even though it did not take place in Mayhill as

originally expected.  Secondly, when the informant's strongly corroborated information is combined with officers' observations of evasive driving techniques consistent with an imminent drug transaction, further weight must be given to the conclusion that a drug transaction was at play.  All of these facts together easily amount to a fair probability that a crime was being committed.

Given the weight of these circumstances, a minor inconsistency in the informant's tip—the truck was white instead of black—does not defeat a finding of probable cause.  Accordingly, probable cause arose prior to the stop, and the evidence was properly admitted.

### B.  Traxler's Sentencing

Traxler was sentenced to 324 months, at the bottom of the applicable U.S. Sentencing Guidelines (USSG) range.  At sentencing, Traxler objected to the Guidelines range of 324–405 months recommended in his pre-sentence investigation report.  He specifically requested that the court reject an upward two-level leadership adjustment and that the court consider a non-Guidelines sentence under 18 U.S.C. § 3553(a) due to his drug addiction, age, and poor health.  The court found Traxler was a leader and imposed the two-level adjustment pursuant to USSG § 3B1.1(c).  The court, however, only indirectly addressed Traxler's reasons for a lower sentence under 18 U.S.C. § 3553(a).

In the course of the sentencing, the following exchange took place between the sentencing judge and Traxler after Traxler expressed hope that he would "get something out of [jail]":

> THE COURT: Gosh, I do too. That's my hope for you. The fact is, good things can come from jail. A guy named Paul was put in jail a couple thousand years ago and wrote a bunch of letters from jail —
>
> TRAXLER: Yes.
>
> THE COURT: — and people are still reading those letters and being encouraged by them and finding hope in them thousands of years later. So don't tell me that good things can't come from jail. I guess they can, and I hope they will in your experience.

Vol. X at 31:7-17.

Traxler first argues this reference to the Apostle Paul by the sentencing judge impermissibly injected religion into the sentencing process, thereby violating his Fifth Amendment right to due process of law. He also argues that his case should be remanded for re-sentencing under *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1117 (10th Cir. 2006), because the sentencing judge did not consider the Guidelines factors in arriving at his sentence. Finally, he argues his sentence is otherwise unreasonable. We disagree.

Traxler did not object at the hearing to the sentencing judge's comments about the Apostle Paul, so we review his due process claim only for plain error. *See United States v. Battle*, 289 F.3d 661, 664–65 (10th Cir. 2002). We review

-10-

sentences imposed by the district court for reasonableness.  *Sanchez-Juarez*, 446 F.3d at 1114.

### 1. Due Process

Sentencing must comply with due process, and a judge may not base a sentence on impermissible considerations, such as race, religion, or gender. *Gardner v. Florida*, 430 U.S. 349, 358, 362 (1977).  Traxler argues that the sentencing judge imposed a higher sentence because of impermissible religious considerations.

Traxler principally relies on a Fourth Circuit case that held a judge's comments about religion during sentencing violated the defendant's due process rights.  *See United States v. Bakker*, 925 F.2d 728 (4th Cir. 1991).  In *Bakker*, the defendant was a high-profile televangelist charged with fraud.  Jim Bakker was accused of misappropriating millions of dollars collected by selling partnerships to his followers that were supposed to provide lodging benefits at a Christian retreat center Bakker promised to construct.  Instead, Bakker used the money to fund a lavish lifestyle for himself and his wife.  In sentencing Bakker, the judge commented: "He had no thought whatever about his victims and *those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests*."  *Id.* at 740 (emphasis in original).

On appeal, the court vacated Bakker's sentence.  In finding that the judge appeared to sentence Bakker more harshly for personal considerations rather than

based on Bakker's conduct, the court concluded that his due process rights had been compromised because of "the explicit intrusion of personal religious principles as the basis of a sentencing decision." *Id.* at 741. The decision emphasized that the sentencing judge's "personal religious principles" were the reason for Bakker's sentence and refused to "sanction sentencing procedures that create the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it." *Id.* at 740. The court paid particular attention to the personal offense the judge expressed on behalf of "those of us who do have a religion," which suggested that Bakker's conduct had subjected the judge personally to ridicule. *Id.* at 740.

The case was remanded for resentencing after the court concluded the sentencing judge's religion had been the decisive factor in determining what sentence to impose. *Id.* at 740–41 ("Regrettably, we are left with the apprehension that the imposition of a lengthy prison term here may have reflected the fact that the court's own sense of religious propriety had somehow been betrayed."). On remand, a different judge reduced Bakker's sentence from forty-five to eighteen years. *See United States v. Taggart*, Nos. 92-6468, 92-6469, 1993 WL 10876, at *1 (4th Cir. Jan. 21, 1993).

We have once before addressed an appeal predicated on *Bakker*. In a case involving theft of military equipment, we interpreted *Bakker's* due process logic to extend only to those circumstances where impermissible personal views expressed at

sentencing were the basis of the sentence. *United States v. Roth*, 934 F.2d 248, 253 (10th Cir. 1991) (finding no due process violation when judge's reference to his personal military background "simply highlighted the seriousness of defendant's offense"). Other courts agree. *See, e.g., Arnett v. Jackson*, 393 F.3d 681, 687–88 (6th Cir. 2005) (finding no due process violation when sentencing judge's reference to a Bible verse was not the "basis" of the sentence or the judge's "final source of authority"); *United States v. Salama*, 974 F.2d 520, 522–23 (4th Cir. 1992) (finding no due process violation when judge's "shock" at the leniency of the Guidelines and references to defendant's alienage did not influence the sentence imposed). These cases confirm that context matters.

The context of the judge's comments in this case easily disposes of the due process allegation. It is obvious that the sentencing judge referred to the Apostle Paul's letters as a way to illustrate that something good can come from difficult circumstances, even jail. In no way did the judge indicate Traxler needed a longer sentence to pay religious penance. Indeed, nothing suggests the judge's personal view of those letters prompted or influenced any aspect of Traxler's sentence. The judge expressed no personal offense analogous to the *Bakker* judge's defense of "those of us who do have a religion," and the record does not support a view that Traxler received a harsher sentence because of the judge's personal religious principles. In fact, the judge sentenced Traxler at the bottom of the Guidelines range.

In short, Traxler suffered no prejudice—religious or otherwise—because of the court's reference to the Apostle Paul. We are satisfied the judge's personal religious views were not a factor in Traxler's sentence.

## 2. Sanchez-Juarez

When a defendant makes a non-frivolous argument for a below-Guidelines sentence, but receives a within-Guidelines sentence, the district court must provide the appellate court with a record by which this court can discern whether the district court considered the applicable 18 U.S.C. § 3553(a) factors. *Sanchez-Juarez,* 446 F.3d at 1117. Arguments "clearly without merit" can be "passed over in silence." *Id.* (quoting *United States v. Cunningham*, 429 P.3d 673, 679 (7th Cir. 2005). At the sentencing hearing, Traxler argued a below-Guidelines sentence was appropriate because of his age, long drug addiction, and poor health. Traxler argues the district court did not refer to the § 3553(a) factors in arriving at his sentence. Since he did not object at sentencing, we review for plain error. *United States v. Torres-Duenas*, 461 F.3d 1178, 1182-83 (10th Cir. 2006).

Resentencing is not required under *Sanchez-Juarez*. The sentencing judge must address the substance of Traxler's argument but need not refer explicitly to every § 3553(a) factor. *See United States v. Lopez-Flores*, 444 F.3d 1218, 1222 (10th Cir. 2006). The sentencing judge here discussed Traxler's long history of drug abuse and the seriousness of the methamphetamine problem as reasons for not departing from the Guidelines. He addressed Traxler's medical problems by

-14-

directing that Traxler be housed in a facility with appropriate medical resources. The judge also referred to and incorporated the pre-sentence report, which expressly discussed the § 3553(a) factors and determined they did not warrant a non-Guidelines sentence.

The record thus provides an adequate basis for reviewing the sentencing judge's consideration of the § 3553(a) factors, and we are satisfied that the judge considered them along with Traxler's arguments. Accordingly, there was no error, let alone plain error.

### 3. Reasonableness

Traxler's sentence is presumptively reasonable under *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006), because it is within the Guidelines range. Traxler has presented nothing to rebut that presumption or indicate that the court would impose a lesser sentence upon further consideration. Traxler's plea for a lesser sentence was fully evaluated at the sentencing hearing. Even without the *Kristl* presumption of reasonableness, we would find Traxler's sentence was a reasoned and reasonable application of the court's discretion under § 3553.

### III. Conclusion

For the foregoing reasons, we AFFIRM Traxler's sentence and the district court's denial of the motion to suppress.