**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 8, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ALFREDO SALAYANDIA-REYES,

    Defendant - Appellant.

No. 22-2088
(D.C. No. 2:22-CR-00547-MIS-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **BACHARACH**, and **EID**, Circuit Judges.
_____

After pleading guilty to unlawful reentry into the United States in violation of

8 U.S.C. § 1326, the U.S. District Court for the District of New Mexico sentenced

Defendant Alfredo Salayandia-Reyes to twenty-seven months' imprisonment.  On

appeal, Mr. Salayandia-Reyes argues that the district court plainly erred in failing to

explain why it denied his motion for a variance and why it imposed that sentence.

Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that Mr. Salayandia-

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10TH CIR. R. 32.1.

Reyes has failed to establish any error, let alone plain error, and thus **affirm** his sentence.

## I

### A

The following facts are drawn from Mr. Salayandia-Reyes's presentence investigation report, the transcripts of his sentencing and change-of-plea hearings, and other portions of the record. *See United States v. Bellamy*, 925 F.3d 1180, 1182 n.2 (10th Cir. 2019).

Mr. Salayandia-Reyes, a citizen of Mexico, had previously been removed from the United States in 2003, 2004, 2006, and 2017. Following that last deportation, he lived in Anapra, Chihuahua, Mexico, just over the border from the United States. Shortly before the Christmas holiday, in December 2021, Mr. Salayandia-Reyes's romantic partner ended their relationship. Mr. Salayandia-Reyes then drank heavily for two days. On the night of December 25, 2021, Mr. Salayandia-Reyes, who was quite intoxicated, decided to attempt to enter the United States, apparently to seek employment and residence in El Paso. Without bringing any money or a phone, he climbed a mountain, presumably Mount Cristo Rey, and fell down into United States territory. He was found shortly thereafter by United States Border Patrol in Doña Ana County, New Mexico.

**B**

**1**

Mr. Salayandia-Reyes was charged by information with unlawfully reentering the United States after he had previously been removed, in violation of 8 U.S.C. § 1326(a) and (b).  He waived indictment, and he then pleaded guilty on April 6, 2022.

**2**

The presentence investigation report ("PSR") laid out the basic facts of Mr. Salayandia-Reyes's offense, discussed his personal characteristics and criminal history, and calculated his advisory sentencing range under the U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines").[1]  The PSR calculated Mr. Salayandia-Reyes's total offense level under the Guidelines as fifteen.

The PSR went on to discuss Mr. Salayandia-Reyes's criminal history.  Mr. Salayandia-Reyes, who was forty-two years old at the time the PSR was prepared, had a number of criminal convictions from when he was in his twenties.  In particular, he had (1) a conviction from 2001 for unlawful possession of a controlled substance; (2) a conviction from 2001 for harassment involving a strike, shove, or kick; (3) a conviction from 2002 for criminal impersonation; (4) a conviction from 2002 for theft/larceny; (5) convictions from 2003 for false imprisonment and

---

[1]     In preparing the PSR, the U.S. Probation Office relied on the 2021 edition of the Guidelines.  We do the same.  *See United States v. Ellis*, 23 F.4th 1228, 1233 n.4 (10th Cir. 2022).

harassment involving a strike, shove, or kick; (6) a conviction from 2003 for illegal reentry into the United States; (7) a conviction from 2005 for driving under the influence; (8) convictions from 2005 for obstructing an officer and third-degree assault; and (9) convictions from 2007 for felony menacing and possession of a controlled substance.

Several aspects of these convictions bear noting. According to the PSR, Mr. Salayandia-Reyes's 2002 conviction for harassment involved an argument where, during a domestic quarrel, Mr. Salayandia-Reyes "grabbed the victim on her upper arms, causing bruising; covered her mouth with his hand which caused difficulty breathing, and threatened to kill her if he ever caught her talking to another man." Supp. R., Vol. II, at 9 (PSR, filed June 2, 2022). Mr. Salayandia-Reyes's 2003 conviction for harassment was similar: it involved the same victim and, again, Mr. Salayandia-Reyes "threatened to kill the victim[] . . . and was holding onto her arms and refusing to let her go." *Id.* at 10. And, although the PSR does not describe the details of his offenses, Mr. Salayandia-Reyes's 2007 convictions for felony menacing and possession of a controlled substance resulted in a substantial thirteen-year sentence. Finally, Mr. Salayandia-Reyes had been previously removed from the United States to Mexico on four occasions, and he served a one-year sentence for illegal reentry after unlawfully returning to the United States in 2003.

Based on this criminal history, the PSR determined Mr. Salayandia-Reyes's criminal history category to be II. This criminal history category, along with the total offense level of fifteen, resulted in an advisory imprisonment range of twenty-one

4

months to twenty-seven months under the Guidelines.  The PSR identified no factors that would warrant a departure or variance.

Mr. Salayandia-Reyes had no objections to the PSR.

**3**

Mr. Salayandia-Reyes filed a motion requesting that the district court vary downward from the Guidelines advisory imprisonment range and impose a sentence of time-served with a three-year term of supervised release.  According to Mr. Salayandia-Reyes, the nature and circumstances of the offense weighed in favor of a downward variance because he entered the United States on "a spur-of-the-moment drunken whim."  R., Vol. I, at 17 (Mot. for Variance, filed July 14, 2022).  He also argued that his history and circumstances supported a downward variance because, although he had gotten into trouble when he was a younger man, his record was unblemished for the past fifteen years.  Furthermore, he suggested that he had received the lengthy thirteen-year sentence for felony menacing and possession of a controlled substance because he insisted on taking that matter to trial.

The government opposed Mr. Salayandia-Reyes's request for a variance and argued that he should receive a sentence at the "low-end" of the Guidelines range. *Id.* at 19 (Resp. to Mot. for Variance, filed July 21, 2022).  As to the argument about the nature and circumstances of the offense, the government simply noted that drunkenness was no excuse for criminal activity.  And in response to Mr. Salayandia-Reyes's arguments about his criminal history, the government observed that (1) Mr. Salayandia-Reyes's claims about his "unblemished record" for the past fifteen years

were not particularly persuasive given that he had been imprisoned or deported for most of that time; (2) Mr. Salayandia-Reyes already had a prior conviction for illegal reentry; (3) Mr. Salayandia-Reyes had a pattern of deceitful conduct; and (4) Mr. Salayandia-Reyes had a pattern of "both assaultive conduct and issuing violent threats," especially to his domestic partners. *Id.* at 22–23. The government also made arguments on the other 18 U.S.C. § 3553(a) sentencing factors and why those factors supported the requested sentence.

**4**

The district court held a sentencing hearing on July 27, 2022. At the beginning of the hearing, the district court announced that "[h]aving reviewed all of the materials," it was "considering giving a high-end sentence in this case because of the criminal history, especially the last charge for which the defendant received the 13-year sentence," but that it would "hear first from the parties." R., Vol. II, at 2:24–3:3 (Sentencing Tr., dated July 27, 2022).

The government, relying on Mr. Salayandia-Reyes's "history of assaultive conduct and menacing behavior" as well as his "pattern of deceitful conduct," requested a within-Guidelines sentence. *Id.* at 3:5–19. And Mr. Salayandia-Reyes reiterated his request for a downward variance and gave an allocution.

The district court questioned Mr. Salayandia-Reyes about his history of violent convictions. Mr. Salayandia-Reyes explained that he abused drugs and alcohol and made poor decisions when he was younger, but he asserted that he "never hurt anyone physically" and it "never came [] . . . down to actually throwing a punch." *Id.*

6

at 7:15–25. The district court pointed out that Mr. Salayandia-Reyes had a 2001 conviction for "striking a victim, causing bruises on her and covering her mouth with [his] hand." *Id.* at 8:5–7. It allowed Mr. Salayandia-Reyes to respond, and he contended that the victim had attacked him.

The district court then pronounced Mr. Salayandia-Reyes's sentence:

> The Court adopts the Presentence Report's factual findings. It's considered the Sentencing Guideline applications and the factors set forth in 18 U.S.C. [§] 3553(a). The Offense Level is 15. The Criminal History Category is III. The Guideline range is 21 to 27 months. The Court notes the defendant illegally reentered the U.S. after having previously been deported, subsequent to a felony conviction. As to the Information, the defendant is committed to the custody of the Bureau of Prisons for a term of 27 months. The Court will not impose supervised release.

*Id.* at 9:7–17.[2] The twenty-seven-month sentence was at the top of the Guidelines range. Mr. Salayandia-Reyes did not object to the reasons given by the district court in support of the sentence.

Judgment was entered on July 27, 2022. Mr. Salayandia-Reyes timely appealed. *See* FED. R. APP. P. 4(b)(1)(A)(i).

---

[2]    The district court seemingly misspoke when it stated that Mr. Salayandia-Reyes's criminal history category was III. The PSR, which the district court adopted, makes clear that his criminal history category was in fact II. The Guidelines range actually calculated by the district court is also consistent with a criminal history category of II. No party contemporaneously objected to this misstatement. And although Mr. Salayandia-Reyes mentions this misstatement in his appellate briefing, he does not base any arguments on it. He has thus waived any argument based on this issue, *see Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012), and we decline to discuss it further.

**II**

Typically, "we review sentences for reasonableness under a deferential abuse-of-discretion standard." *United States v. Begaye*, 635 F.3d 456, 461 (10th Cir. 2011) (quoting *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008)). "Reasonableness review is a two-step process comprising a procedural and a substantive component." *Id.* (quoting *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008)). "Procedural reasonableness addresses whether the district court incorrectly calculated or failed to calculate the Guidelines sentence, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, relied on clearly erroneous facts, or failed to adequately explain the sentence." *United States v. Reyes-Alfonso*, 653 F.3d 1137, 1144 (10th Cir. 2011) (quoting *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008)). Because this case involves a challenge to the district court's explanation for the sentence imposed, it presents a challenge to only the procedural reasonableness of the sentence. *See United States v. Hamilton*, 510 F.3d 1209, 1218 (10th Cir. 2007).

But, as Mr. Salayandia-Reyes concedes, he raised no objection to the district court's method of determining the sentence. *See* Aplt.'s Opening Br. at 10 ("Because Mr. Salayandia-Reyes did not object, this Court reviews for plain error."). When a defendant does "not object to the procedure by which his sentence was determined and explained, we may reverse the district court's judgment only in the presence of plain error." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007);

*see also United States v. Wireman*, 849 F.3d 956, 961–62 (10th Cir. 2017); *United States v. Garcia*, 757 F. App'x 708, 711–12 (10th Cir. 2018).[3]

"A party seeking relief under the plain-error rubric bears the burden of showing '(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights.'" *United States v. Finnesy*, 953 F.3d 675, 684 (10th Cir. 2020) (quoting *United States v. McGehee*, 672 F.3d 860, 876 (10th Cir. 2012)). "If these factors are met, [this court] may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration in original) (quoting *United States v. Cordery*, 656 F.3d 1103, 1105 (10th Cir. 2011)).

### III

Mr. Salayandia-Reyes raises two related, but distinct, arguments.  First, he argues that the district court was required to explain its reasons for rejecting his request for a downward variance.  Second, he argues that even if the district court did not have such a duty, the district court failed to adequately explain the sentence it imposed.  For the reasons given below, both arguments are unavailing.[4]

---

[3]    We cite to unpublished cases only for their persuasive value and do not treat them as binding authority. *See Ellis*, 23 F.4th at 1238 n.6.

[4]    Mr. Salayandia-Reyes raises a third argument: that the statute making illegal reentry a federal crime, 8 U.S.C. § 1326, is unconstitutional because that statute was enacted "with a racially discriminatory intent . . . in violation of the Fifth Amendment's guarantee of equal protection."  Aplt.'s Opening Br. at 24.  Mr. Salayandia-Reyes concedes that he did not raise this argument to the district court and that he makes the argument for preservation purposes only because it cannot survive plain-error review. *See id.* at 24–25.  In light of these concessions, we

**A**

Mr. Salayandia-Reyes first argues that because he raised non-frivolous arguments in support of a downward variance, the district court procedurally erred because it was required to explain why it rejected his request. Mr. Salayandia-Reyes asserts that our prior precedent in *United States v. Sanchez-Juarez*, 446 F.3d 1109 (10th Cir. 2006), required such an explanation.

Mr. Salayandia-Reyes is mistaken. In a recently issued decision, *United States v. Nunez-Carranza*, 83 F.4th 1213 (10th Cir. 2023), we opined on this precise issue.[5] In that case, we addressed the defendant's identical argument that, based on *Sanchez-Juarez*, the district court "erred procedurally by not explaining adequately why the court rejected his request for a downward variance and instead imposed a within-guideline sentence." *Nunez-Carranza*, 83 F.4th at 1218.

We rejected the defendant's argument, noting that "we have clarified that *Sanchez-Juarez* does not require a sentencing court to address every argument a defendant asserts for a more lenient sentence." *Id.* at 1221. In particular, we explained that we have, in a number of decisions, delineated the proper scope of

---

decline to address the merits of this argument. *See United States v. Nunez-Carranza*, 83 F.4th 1213, 1218 n.3 (10th Cir. 2023).

[5]      In recognition of the similarity of the issues presented in *Nunez-Carranza* and this case, we cancelled oral argument and abated this case pending resolution of *Nunez-Carranza*. *See* Order, No. 22-2088, at *1–2 (10th Cir., filed July 31, 2023). We lifted the abatement after the issuance of the mandate in *Nunez-Carranza*, and we asked the parties to file supplemental briefs addressing the impact of *Nunez-Carranza* on this case. *See* Order, No. 22-2088, at *1 (10th Cir., filed Nov. 2, 2023).

*Sanchez-Juarez*.  *See id.* at 1221–22 (citing *Wireman*, 849 F.3d at 958–59); *United States v. Algarate-Valencia*, 550 F.3d 1238, 1244 (10th Cir. 2008); *United States v. Jarrillo-Luna*, 478 F.3d 1226, 1229–30 (10th Cir. 2007), *overruled on other grounds by United States v. Lopez-Macias*, 661 F.3d 485, 489 (10th Cir. 2011); *accord United States v. Martinez-Barragan*, 545 F.3d 894, 903 (10th Cir. 2008).  We opined that *Sanchez-Juarez* "'merely stands for the proposition that a sentencing judge confronted with a nonfrivolous argument for leniency must somehow indicate that he or she did not "rest on the guidelines alone, but considered whether the guideline sentence actually conforms, in the circumstances, to the statutory [section 3553(a)] factors."'" *Nunez-Carranza*, 83 F.4th at 1221 (alteration in original) (quoting *Jarrillo-Luna*, 478 F.3d at 1229–30).

Reading our precedents together, including *Sanchez-Juarez*, we set forth the following test:

> [W]e will uphold a sentencing court's decision to reject a defendant's non-frivolous request for a downward variance if we can determine from the record that the sentencing court 1) entertained the defendant's argument for a downward variance; 2) considered the 18 U.S.C. § 3553(a) sentencing factors, which include the calculation of the advisory sentencing range under the guidelines; and 3) concluded that a within-guideline sentence is appropriate in light of the § 3553(a) factors.

*Nunez-Carranza*, 83 F.4th at 1222.

Applying that test, we concluded that "[a]lthough the sentencing court . . . did not expressly state why it rejected Nunez-Carranza's argument for a below-guideline sentence, the court adequately complied with its obligations to explain the within-

11

guideline sentence it imposed." *Id.* In particular, we noted that the district court (1) entertained the defendant's motion for a variance; (2) clearly treated the Guidelines as advisory; and (3) did not rest solely on the Guidelines and instead considered the § 3553(a) factors. *See id.* at 1222–23. Given that the district court "met its obligation of adequately explaining why it imposed a sentence at the bottom of the advisory guideline range and in the process inevitably rejecting Nunez-Carranza's request for a downward variance," we concluded that "the district court did not err by failing to explain adequately why it imposed a within-guideline sentence instead of the below-guideline sentence Nunez-Carranza requested." *Id.* at 1223.

Our decision in *Nunez-Carranza* squarely forecloses Mr. Salayandia-Reyes's argument that *Sanchez-Juarez* required the district court to explain on the record why it denied his request for a downward variance. *Nunez-Carranza* makes pellucid that when a district court imposes a within-Guidelines sentence, it need not expressly reject all non-frivolous arguments for a variance so long as it is clear that the district court entertained the parties' arguments, considered the § 3553(a) factors, and did not view the Guidelines as binding.[6] *See id.* at 1221–23. As explained in more detail below, the district court discharged that duty here.

---

[6] *Nunez-Carranza* does involve at least one distinguishing feature: in that case, the district court sentenced the defendant at the bottom of the Guidelines range, as the government had requested. *See* 83 F.4th at 1217–18. Here, in contrast, the district court sentenced Mr. Salayandia-Reyes at the top of the Guidelines range after the government originally requested a sentence at the bottom of that range. Mr.

Mr. Salayandia-Reyes recognizes the import of *Nunez-Carranza*, but "maintains it was wrongly decided" because it conflicts with *Sanchez-Juarez*, and he argues that we must follow *Sanchez-Juarez* as the earlier precedent. *See* Aplt.'s Supp. Br. at 4. In support, he points to isolated language from *Sanchez-Juarez* that he contends is in conflict with *Nunez-Carranza*. *See id.*

Mr. Salayandia-Reyes is correct that if there were an actual conflict between *Sanchez-Juarez* and *Nunez-Carranza*, we would be obligated to follow the former. *See United States v. Suggs*, 998 F.3d 1125, 1137 (10th Cir. 2021) ("In cases of conflicting circuit precedent our court follows earlier, settled precedent over a subsequent deviation therefrom." (quoting *United States v. Sabillon-Umana*, 772 F.3d 1328, 1334 n.1 (10th Cir. 2014))). But there is no conflict here: *Nunez-Carranza* only clarified the standard laid out in *Sanchez-Juarez* and developed by subsequent cases. Indeed, we rejected a similar argument in *Nunez-Carranza* itself: there, the defendant argued that we need not follow decisions issued after *Sanchez-Juarez* because those decisions conflicted with *Sanchez-Juarez*, the earlier precedent. *See* 83 F.4th at 1222 n.5. We rejected this argument, noting that "this is not a situation where different Tenth Circuit panels decided the same question in different ways"—"[i]nstead, the later cases . . . expressly recognized that *Sanchez-Juarez* was the law of the circuit; applied it; and in doing so interpreted, explained and clarified *Sanchez-Juarez*." *Id.* The same holds true here, and it follows that we are bound by

---

Salayandia-Reyes does not argue that this circumstance makes the test set forth in *Nunez-Carranza* inapplicable, and we can think of no reason why it would.

*Nunez-Carranza*, which forecloses Mr. Salayandia-Reyes's argument that *Sanchez-Juarez* required the district court to explain why it rejected his arguments in favor of a variance.

**B**

Mr. Salayandia-Reyes further argues that even if the district court was not necessarily required to explain the reasons for rejecting his request for a variance under *Sanchez-Juarez*, the district court erred because it failed to explain the sentence that it actually imposed. In other words, he contends that the district court's explanation for the sentence would not allow this Court to "'be able to discern from the record that "the sentencing judge [did] not rest on the guidelines alone, but . . . consider[ed] whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors."'" Aplt.'s Reply Br. at 6 (omission and alterations in original) (quoting *Sanchez-Juarez*, 446 F.3d at 1117). He further argues that our opinion in *Nunez-Carranza* actually supports his argument because many of the circumstances in *Nunez-Carranza* that we relied upon for our conclusion that the district court adequately explained its sentence are not present here.

But Mr. Salayandia-Reyes's challenge is unavailing under our plain-error standard. The district court's explanation for the sentence imposed was adequate, so there was no procedural error and Mr. Salayandia-Reyes has not carried his burden under the first prong of the plain-error test. This failing sounds the death knell for his appeal. *See, e.g.*, *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) ("We will not reverse a conviction for plain error unless all four prongs of

14

the plain-error test are satisfied." (quoting *United States v. Caraway*, 534 F.3d 1290, 1299 (10th Cir. 2008))).

"In order to facilitate appellate reasonableness review and to ensure that the § 3553(a) factors have informed a district court's exercise of discretion, we require district courts to give reasons for their sentences." *United States v. Chavez-Calderon*, 494 F.3d 1266, 1268 (10th Cir. 2007). "Where . . . a district court imposes a sentence falling within the range suggested by the Guidelines, Section 3553(c) requires the court to provide only a general statement of 'the reasons for its imposition of the particular sentence.'" *Ruiz-Terrazas*, 477 F.3d at 1199 (quoting 18 U.S.C. § 3553(c)); *see also Chavez-Calderon*, 494 F.3d at 1268–69.

As we explained in *Nunez-Carranza*, when a district court rejects a non-frivolous request for a downward variance, we will uphold the district court's decision if it is clear that the district court "1) entertained the defendant's argument for a downward variance; 2) considered the 18 U.S.C. § 3553(a) sentencing factors, which include the calculation of the advisory sentencing range under the guidelines; and 3) concluded that a within-guideline sentence is appropriate in light of the § 3553(a) factors." 83 F.4th at 1222. Thus, the district court must "somehow indicate[] that [it] did not rest on the guidelines alone, but considered whether the guideline sentence actually conforms, in the circumstances, to the [18 U.S.C. § 3553(a)] statutory factors." *Wireman*, 849 F.3d at 963 (second and third alterations in original) (quoting *Martinez-Barragan*, 545 F.3d at 903). We do not, however, require the district court to "recite any magic words to show us that it fulfilled its

15

responsibility to be mindful of the factors in [§ 3553(a).]" *Chavez-Calderon*, 494 F.3d at 1268 (alteration in original) (quoting *Jarrillo-Luna*, 478 F.3d at 1229).

For several reasons, the district court here adequately explained its rationale for imposing the within-Guidelines sentence and effectively rejecting Mr. Salayandia-Reyes's request for a downward variance. *First*, it is evident from the record that the district court "entertained" Mr. Salayandia-Reyes's request for a downward variance, even if it did not explicitly make such an announcement. The district court stated that it had "reviewed all of the materials" and was considering giving a high-end sentence, but that it would hear from the parties. R., Vol. II, at 2:24–3:3. After hearing Mr. Salayandia-Reyes's argument in support of a variant sentence, the district court expressed concern about his history of violent convictions, which was one of the primary arguments that the government raised against a variant sentence. This provides sufficient evidence that the district court "entertained" Mr. Salayandia-Reyes's motion. *Nunez-Carranza*, 83 F.4th at 1222.

*Second*, it is evident from the record that the district court considered the § 3553(a) factors and did not rest solely on the Guidelines. As in *Nunez-Carranza*, the district court expressly stated that it considered the § 3553(a) factors in arriving at the appropriate sentence. *See* 83 F.4th at 1222; *accord Chavez-Calderon*, 494 F.3d at 1269 (noting that the district court's express invocation of the § 3553(a) factors weighed in favor of concluding "that the sentencing decision was tethered to the § 3553(a) factors"); *Ruiz-Terrazas*, 446 F.3d at 1203 ("The record before us reveals that the district court entertained Mr. Ruiz-Terrazas's Section 3553(a) arguments at

16

length; indicated on the record that it had considered the Section 3553(a) factors; and proceeded to explain its reliance on the range suggested by the sentencing Guidelines. In our view, no more is required by statute or our precedents."); *Algarate-Valencia*, 550 F.3d at 1244 ("The judge also stated that he had reviewed the § 3553(a) factors.").

Additionally, the district court considered and incorporated the PSR, which contained information relevant to the § 3553(a) factors and noted that the U.S. Probation Office had not identified any information that "would warrant a variance from the advisory guideline range." Supp. R., Vol. II, at 16;[7] *see Nunez-Carranza*, 83 F.4th at 1222 (finding it relevant that the district court had considered the PSR, which analyzed the § 3553(a) factors and recommended a within-Guidelines sentence); *United States v. Traxler*, 477 F.3d 1243, 1250 (10th Cir. 2007) (same); *see also Garcia*, 757 F. App'x at 713 (same).

---

[7] Admittedly, the PSR did not expressly discuss the § 3553(a) factors even though it did include information relevant to those factors and noted that the U.S. Probation Office did not see any circumstances warranting a variance. Thus, on its own, the district court's incorporation of the PSR arguably would not have been enough to indicate that the district court based the sentence on the § 3553(a) factors. *See Sanchez-Juarez*, 446 F.3d at 1115 & n.6 (concluding that the district court did not sufficiently indicate that it was basing its sentence on the § 3553(a) factors because, although it referenced the PSR, the PSR "did not refer to or discuss the § 3553(a) factors and did not make a sentencing recommendation based on its consideration of those factors"). But the PSR does not exist here in isolation—it exists alongside the district court's colloquy with Mr. Salayandia-Reyes and the court's express invocation of the § 3553(a) factors. These circumstances were not present in *Sanchez-Juarez*. *See id.*

*Third*, the district court's colloquy with Mr. Salayandia-Reyes—in which it expressed concern about his domestic violence convictions—implicated several of the § 3553(a) factors. In particular, the colloquy implicated the defendant's history and characteristics as well as the need to protect the public from the defendant's further crimes. *See Nunez-Carranza*, 83 F.4th at 1223; *Martinez-Barragan*, 545 F.3d at 903; *see also Wireman*, 849 F.3d at 966 (concluding that the district court's "concerns" about the defendant's prior criminal history and the nature of the offense, as well as its invocation of the Guidelines, were sufficient to explain its denial of the defendant's request for a more lenient sentence). Thus, "[a]lthough the sentencing court did not explicitly identify the specific subsections of § 3553(a) that it considered," it is sufficient that "the facts and circumstances the district court considered were plainly relevant to many of the § 3553(a) factors." *Nunez-Carranza*, 83 F.4th at 1223; *see also Martinez-Barragan*, 545 F.3d at 903.

*Fourth*, the circumstances here are quite similar to those in *Nunez-Carranza* itself—where we concluded that the district court adequately explained its reasoning. *Compare* R., Vol. II, at 2:24–9:19, *with Nunez-Carranza*, 83 F.4th at 1216–18, 1222–23. Mr. Salayandia-Reyes himself noted as much in his opening brief, contending that the district court in *Nunez-Carranza* "plainly failed to explain the sentence in a materially identical manner" as this case. Aplt.'s Opening Br. at vi.

For those reasons, we conclude that the district court adequately explained its reasons for giving a sentence at the top of the Guidelines and, in the process,

rejecting Mr. Salayandia-Reyes's request for a variance. *See Nunez-Carranza*, 83 F.4th at 1223.

Mr. Salayandia-Reyes's arguments to the contrary are unpersuasive. According to him, *Nunez-Carranza* actually supports his argument because there were more indicia in that case that the district court knew that it was not bound by the Guidelines. Mr. Salayandia-Reyes is correct that, unlike here, the district court in *Nunez-Carranza* was originally inclined to give a below-Guidelines sentence—a circumstance that clearly indicated an awareness that the Guidelines were advisory only. *See* 83 F.4th at 1222. But ultimately, the sentencing transcript here evinces the district court's concern with the § 3553(a) factors, even if all of the circumstances present in *Nunez-Carranza* are not necessarily present here.

In sum, viewing the record as a whole, we cannot say that the district court committed a procedural error by failing to explain the sentence imposed. It necessarily follows that Mr. Salayandia-Reyes has not met his burden to show that the district court erred—the first prong of our plain-error test. To secure reversal, however, Mr. Salayandia-Reyes must satisfy each prong of the plain error test. *See, e.g.*, *Rosales-Miranda*, 755 F.3d at 1258. Accordingly, he cannot prevail here.

**IV**

For the foregoing reasons, we **affirm** the judgment of the district court.


Entered for the Court


Jerome A. Holmes
Chief Judge