**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 21, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSÉ MARTINEZ-BARRAGAN,

    Defendant-Appellant.

No. 06-2333

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-06-1246-MCA)**
_____

Zachary A. Ives (Martha E. Mulvany with him on the briefs), Freedman Boyd
Hollander Goldberg & Ives, Albuquerque, New Mexico, for Defendant-Appellant.

William J. Pflugrath, Assistant United States Attorney (Larry Gómez, Acting
United States Attorney, with him on the brief), Albuquerque, New Mexico, for
Plaintiff-Appellee.

_____

Before **HENRY,** Chief Judge, **McWILLIAMS**, Senior Circuit Judge, and
**HOLMES**, Circuit Judge.

_____

**HOLMES**, Circuit Judge.

_____

Appellant José Martinez-Barragan pleaded guilty to illegal reentry by a deported alien after having been previously convicted of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). He challenges both the procedural and substantive reasonableness of his sentence. We exercise jurisdiction under 28 U.S.C. § 1291. Finding no error, we affirm his sentence.

## I. BACKGROUND

Mr. Martinez-Barragan is a Mexican citizen who has lived in the United States since he was twelve years old. His entire immediate family, including both his parents, four brothers, four sisters, his wife, and his two children (who are American citizens) live in California.

In 2003, Mr. Martinez-Barragan was convicted in San Jose, California, of felony Infliction of Corporal Injury on a Spouse when, in the presence of their four-year-old son, he attempted to asphyxiate his wife with a bleach-soaked towel. He was sentenced to one year imprisonment, which was extended by another two years after he violated the terms of his parole. Upon being released on parole for a second time, Mr. Martinez-Barragan was transferred to the custody of the Bureau of Immigration and Customs Enforcement and deported.

Mr. Martinez-Barragan illegally reentered the United States on March 19, 2006. He was apprehended the next day while driving with five other illegal aliens from New Mexico to Tuscon, Arizona. He pleaded guilty in accordance with a plea agreement.

Mr. Martinez-Barragan's Presentence Investigation Report ("PSR") calculated his offense level as 21 and his criminal history as category VI. In addition to his conviction for infliction of corporal injury, his criminal history included eight points for various misdemeanors, including battery, multiple instances of driving with .08% or higher blood alcohol concentration, and hit and run resulting in property damage. Furthermore, his criminal history score was increased by two points because he reentered the United States while on parole and by one point because he reentered within two years of being released from custody. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4A1.1(d), (e). The PSR stated that there were no factors that would "take his case away from the heartland of cases of similarly situated defendants." R., Vol. II, ¶ 47 at 16 (Presentence Investigation Report, dated Sept. 19, 2006). The recommended Guidelines range was 77 to 96 months' imprisonment.

Mr. Martinez-Barragan moved for a downward departure on three grounds. He argued that "his criminal history category overrepresented the seriousness of his criminal history and the likelihood that he might commit other crimes." Aplt. Br. at 5; U.S.S.G. § 4A1.3(b)(1). He claimed that he reentered the country "to avoid the perceived greater harm of the financial instability of his wife and two sons." Aplt. Br. at 5 (quotation marks omitted); *see also* U.S.S.G. § 5K2.11. Third, he claimed that the combination of the first two factors warranted a departure under U.S.S.G. § 5K2.0(c). He also requested a variance pursuant to 18

U.S.C. § 3553. The government responded that Mr. Martinez-Barragan had "not overcome the presumption of reasonableness that attaches to a sentence within the advisory sentencing guideline range." R., Vol. I, Doc. 18, at 4 (Response to Defendant's Sentencing Memorandum, dated Nov. 6, 2006).

At sentencing, after hearing arguments from both sides, the court adopted the PSR's factual findings, noted that the Guidelines are advisory, and commented that it had "consult[ed] them in assessing the reasonableness of the plea agreement as that agreement, obviously, has the sentence ultimately to be handed down by the Court." R., Supp. Vol. I, Tr. at 10 (Sentencing Hearing, dated Nov. 7, 2006). Noting that it had considered the sentencing factors, the court further stated:

> You believe there is overrepresentation that there may be other reasons to have the Court deviate or somehow vary from the consequences of applying those calculations; correct?
>
> . . . .
>
> In this regard, I certainly understand what your client has said about his economic motivation, but I find that that in and of itself it is not sufficient to justify [a] deviation under the circumstances of this case. I further find that his circumstances do not take his case sufficiently out of the heartland [of] cases or similarly situated cases that would warrant any departure downward pursuant to section 5(k) 2.11 [sic] or 5(k) 2.0 [sic]. I note that . . . a considerable part of his criminal history . . . is based upon misdemeanor convictions. There is one felony, a very, very serious felony conviction. These all occurred, however, within a span of about five years. And if you look at the kind of behavior, the kind of activity that was exhibited in committing these crimes, I have to look

at the recklessness . . . again noting the very serious felony and an additional crime where his wife or his girlfriend were [sic] subjected to violence, extreme violence. The present offense was committed while on probation and parole. I don't find under the circumstances that there is an overrepresentation of your client's criminal history.

Now, you've not presented any facts to me that would highlight anything in his past and history and characteristics that would warrant a departure or the variance or consideration to his benefit under one or more of the sentencing factors under 3553(a). His family circumstances are not extraordinary. As unfortunate as they may be for him, and to many people, they're not extraordinary to take it out of the heartland of cases.

He indicates he returned to the United States to provide financial support for his family, . . . but this does not take it out of the heartland of cases and may get a compelling set of circumstances to justify the Court looking outside of the advisory guideline range or independently looking at it in terms of the factors under the *Booker* decision. So I am going to deny the motion for downward departure and proceed then with sentencing.

*Id.* at 10-12.

Before sentencing, the court asked defense counsel if he had anything further in light of the judgment it intended to enter. Finally, the court stated, "I have adopted the pre-sentence report factual findings . . . . I do consult the advisory guidelines together with the sentencing factors under 3553(a)." *Id*. at 13-14. The court sentenced Mr. Martinez-Barragan to 77 months' imprisonment, the bottom of the Guidelines range. This appeal followed.

## II. DISCUSSION

On appeal, we review sentences for "reasonableness," which has both procedural and substantive dimensions. *United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007), *overruled in part on other grounds by Irizarry v. United States,* 128 S. Ct. 2198, 2201 n.1, 2203-04 (2008). That is, we consider both "the length of the sentence, as well as the method by which the sentence was calculated." *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006). A sentence is procedurally reasonable when the district court computes the applicable Guidelines range, properly considers the § 3553(a) factors, and "afford[s the defendant his] rights under the Federal Rules of Criminal Procedure." *United States v. Geiner*, 498 F.3d 1104, 1107 (10th Cir. 2007) (quoting *Atencio*, 476 F.3d at 1102). A sentence is substantively reasonable when the length of the sentence "reflects the gravity of the crime and the § 3553(a) factors as applied to the case." *Atencio*, 476 F.3d at 1102.

### A. Procedural Reasonableness

Mr. Martinez-Barragan argues that his sentence is procedurally unreasonable for three reasons. First, he argues that the district court effectively treated the Guidelines as mandatory, in violation of *United States v. Booker*, 543 U.S. 220 (2005). Second, he claims that the district court failed to adequately explain the basis for its decision. Third, he contends that the district court applied the wrong standard in seeking to impose a sentence that was reasonable,

-6-

rather than one that conformed to the parsimony principle of § 3553(a)—that is, one that was sufficient but not greater than necessary to effectuate the purposes of sentencing.

Mr. Martinez-Barragan concedes that trial counsel did not object to the procedural reasonableness of his sentence. As a general rule, when a defendant fails to preserve an objection to the procedural reasonableness of his sentence, we review only for plain error. *United States v. Romero*, 491 F.3d 1173, 1176-77 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 319 (2007). There is, however, an exception. "If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." Fed. R. Crim. P. 51(b). Similarly, we have held that a defendant is not required to object when the sentencing court commits an error that the defendant cannot be expected to anticipate. *United States v. Begay*, 470 F.3d 964, 976 (10th Cir. 2006), *rev'd on other grounds,* 128 S. Ct. 1581 (2008). In *Begay*, the district court mistakenly believed that the appellate presumption of reasonableness afforded to within-Guidelines sentences limited its discretion to impose a below-Guidelines sentence. Noting that "[n]othing in the record suggests that [the defendant] should have been prepared for the district court's [error]," we declined to apply the plain error standard. *Id.* Instead we analyzed the decision of the district court for harmless error. *Id.*

Mr. Martinez-Barragan attempts to analogize the *Begay* court's interpretation of *Booker* to the errors the district court allegedly committed here. He argues that the conduct of the district court was equally unforeseeable. Since we ultimately conclude that the district court did not commit any error at all, the difference between plain error and harmless error is largely immaterial. We choose not to take this opportunity to expound on the proper scope of *Begay*'s unforeseeable error doctrine.[1]

### 1. Advisory Nature of Guidelines

Mr. Martinez-Barragan argues that when the district court stated that the circumstances in his case were not so extraordinary as to take it out of the heartland of cases, it manifested a misunderstanding of the advisory nature of the Guidelines. He claims that the district court substituted a pre-*Booker*, heartland

---

[1] Indeed, it is not entirely clear that *Begay*'s unforeseeable error doctrine is still good law. *Begay* relied significantly on our decision in *United States v. Bartsma*, 198 F.3d 1191 (10th Cir. 1999), *overruled in part by Atencio*, 476 F.3d at 1105 n.6. *See* 470 F.3d at 976 ("[W]e will follow *Bartsma* in excusing Mr. Begay's failure to object to the district court's error at the time of pronouncing sentence."). In *Bartsma*, we held that the defendant "did not waive his challenges to the special conditions [of supervised release] by failing to raise them at the sentencing hearing," when the district court's procedure effectively resulted in a "complete lack of notice" that "short-circuited the significance of any opportunity to comment," in contravention of Rule 32's requirements. 198 F.3d at 1198-99. However, in an en banc footnote in *Atencio*, we explicitly overruled *Bartsma,* holding that unpreserved Rule 32 errors are subject to plain error review. 476 F.3d at 1105 n.6. Nevertheless, this case does not provide an occasion for us to decide whether the unforeseeable error doctrine is still vital because we need not resolve here the issue at the heart of that doctrine—the governing standard of review.

analysis for the "requisite variance analysis, effectively reinstating the mandatory Guidelines."  Aplt. Br. at 18.

**a.  "Heartland" analysis**

As part of the sentencing process, a district court may consider whether the case before it lies within the "heartland" of typical cases considered by the Sentencing Commission when it drafted the Guidelines.  Even after *Booker*, the district court is still required to apply the Guidelines and to consider the recommended sentence as one factor in its decision.  *Gall v. United States*, 128 S. Ct. 586, 596 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."); *see also* 18 U.S.C. § 3553(a)(4).  One step in applying the Guidelines is to determine whether or not to depart from the range specified in the Sentencing Table.  *See United States v. Sierra-Castillo*, 405 F.3d 932, 936 n.2 (10th Cir. 2005) ("Although district courts post-*Booker* have discretion to assign sentences outside of the Guidelines-authorized range, they should also continue to apply the Guidelines departure provisions in appropriate cases."); U.S.S.G. § 1A1.1 editorial note, ch. 1, pt. A, introductory cmt. n.4(b) ("When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.").

"Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon v. United States*, 518 U.S. 81, 98 (1996); *see also* U.S.S.G. § 1A1.1 editorial note, ch. 1, pt. A, introductory cmt. n.4(b) ("The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes."). That is, whether the particular case lies within the heartland of similar offenses is a threshold question that a district court must decide when determining whether to grant a departure under the Guidelines. Although *Koon* was decided when the Guidelines were still mandatory, neither *Booker* nor any of the subsequent cases have altered the standard for when to depart from the recommended range.

This kind of heartland analysis is *also* a legitimate part of the district court's analysis of whether to vary from the Guidelines. In *Rita v. United States*, 127 S. Ct. 2456 (2007), the Supreme Court specifically endorsed the use of this technique as part of the weighing of the § 3553(a) factors. *Id.* at 2465 ("[The sentencing judge] may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because . . . the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply."); *see also United States v. Galarza-Payan*, 441 F.3d 885, 888 (10th Cir. 2006) ("Indeed the concept of a 'heartland'—or similarity among cases—is a

part of § 3553(a)(6) . . . , and is a proper consideration when applied in a discretionary fashion.").

Therefore, we have previously rejected the argument that a district court's use of the heartland analysis necessarily implies that it misunderstood the advisory nature of the Guidelines. In *Galarza-Payan*, the sentencing court stated that the defendant's circumstances would have to "fall outside the heartland" to support a departure, or downward adjustment.[2] *Id.* The defendant argued on appeal that the court's statement suggested that it applied the Guidelines in a mandatory fashion. We affirmed the sentence, noting that "the district court, while using pre-*Booker* Guidelines terminology, did not sentence [the defendant] in a mandatory fashion." *Id.* After looking at the sentencing hearing as a whole, we were able to conclude that the district court "understood its discretion and considered [the] § 3553(a) factors." *Id.*; *see also United States v. Valgara*, 223 F. App'x. 799, 803 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 385 (2007) (holding

---

[2]     In *Galarza-Payan*, we appear to have used the term "adjustment" somewhat imprecisely in examining the district court's refusal to sentence *below* the Guidelines range. Ordinarily, the term "adjustment" refers to changes in the offense level within the structure of the Guidelines that occur in computing the Guidelines range, rather than changes that go outside of (i.e., above or below) or "disregard" the Guidelines range. *United States v. Madison*, 990 F.2d 178, 183 (5th Cir. 1993); *see United States v. Bush*, 352 F.3d 1177, 1183-84 (8th Cir. 2003) ("Adjustments are changes to an offense level within the Guidelines. Departures, on the other hand, are sentences imposed outside the Guidelines.") (quotation marks omitted) (quoting *United States v. Joetzki*, 952 F.2d 1090, 1097 (9th Cir. 1991)).

that the sentencing court's conclusion that there was "simply no way to avoid" the base offense level did not indicate mandatory application of the Guidelines); *United States v. Smith*, 219 F. App'x. 765, 769 (10th Cir. 2007) (determining that the district court's "innocuous statement and use of certain nomenclature [including the phrase 'major departure'] at sentencing" did not indicate that the district court misperceived the advisory nature of the Guidelines).

Because many of the same considerations are part of both the departure and variance analyses, there will, necessarily, be some overlap between the two, when a defendant seeks, and the courts consequently are called upon to consider, both forms of relief. Departures and variances are analytically distinct, and courts must be careful not to confuse them. But a sentencing judge does not commit reversible error by consolidating the two discussions. In *Geiner*, we held that when, "in addressing [the defendant's] argument for a departure . . . , the court discusse[s] various § 3553(a) factors," the resulting sentence is procedurally reasonable. *Geiner*, 498 F.3d at 1114. As long as the court takes into account all of the relevant considerations, the order in which it does so is unimportant.

We do not suggest that a heartland comparison is sufficient, by itself, to satisfy the district court's responsibility to weigh all the relevant factors. When the Guidelines were mandatory, a court could not depart from the recommended range unless the case was exceptional. If the court determined that the case was

within the heartland, then its analysis was effectively over.  Now that the Sentencing Guidelines are only advisory, there are no mandatory requirements as to when a district court may sentence a defendant to an above- or below-Guidelines sentence.  *Gall*, 128 S. Ct. at 595 (holding that requiring extraordinary circumstances to justify a variance "come[s] too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range.")  Even in routine, heartland cases, the district court is obligated to consider the § 3553(a) factors.  We, therefore, agree with Mr. Martinez-Barragan that the district court would have erred *if* it concluded that a case was within the heartland of similar cases and that, since it could not justify a departure under the Guidelines, it could not vary from the recommended range either.  However, that is not what happened in this case.

**b.  Weighing the § 3553(a) factors**

We are satisfied that the district court has considered the § 3553(a) factors and has properly exercised its discretion in sentencing Mr. Martinez-Barragan.  The court heard, considered, and rejected Mr. Martinez-Barragan's arguments for a below-Guidelines sentence.  Mr. Martinez-Barragan claims that his criminal history was over-represented.  But the court noted that, in addition to his misdemeanor convictions, Mr. Martinez-Barragan also committed "a very, very serious felony."  R., Supp. Vol. I, Tr. at 11.  The court took into account the fact that many of the offenses were committed within a relatively short period of

-13-

time, which it believed showed recklessness. It also gave weight to the fact that Mr. Martinez-Barragan committed the present offense while on parole. Moreover, the court explicitly mentioned that it was considering these facts both as they relate to Mr. Martinez-Barragan's request for a departure and his request for a variance. It found nothing in his history that would "warrant a departure *or* [a] variance *or* consideration to his benefit under one or more of the sentencing factors under 3553(a)." *Id.* at 12 (emphasis added).

The court also addressed Mr. Martinez-Barragan's argument that he deserved a lesser sentence because reentering the country "was the only way to avoid [a] specific and identifiable greater harm—financial instability of his wife and sons." R., Vol. I, Doc. 17, at 6 (Defendant's Sentencing Memorandum, dated Sept. 28, 2006). While recognizing that the situation may have been difficult for Mr. Martinez-Barragan personally, the court concluded it did not justify a shorter sentence. Many illegal aliens have family members in this country. *See, e.g.*, *United States v. Davila-Salvatierra*, 229 F. App'x. 727, 731 (10th Cir. 2007) (denying a departure or variance to an alien who reentered the United States to visit his dying mother); *United States v. Bernandino-Mejia*, 238 F. App'x. 373, 376 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 548 (2007) (rejecting defendant's argument that he was entitled to a variance because he reentered the United States to be with his wife and children and because deportation would require relocation of the family). Moreover, Mr. Martinez-

Barragan admits that his wife and children are willing to move to Mexico, which undercuts his necessity argument. Again, the court specifically commented that it considered Mr. Martinez-Barragan's motives both to determine whether it would "justify the Court looking outside of the advisory guideline range" as well as "in terms of the factors under the Booker decision." R., Supp. Vol. I, Tr. at 12.

Finally, the court considered the need to provide Mr. Martinez-Barragan with treatment. At the request of Mr. Martinez-Barragan, the court recommended that he be enrolled in a drug and alcohol treatment program run by the Bureau of Prisons. The court also recommended that Mr. Martinez-Barragan receive counseling to help address his problems with domestic violence. Reviewing the transcript as a whole, it is clear that the district court understood its discretion, considered many facts specific to Mr. Martinez-Barragan, and applied the Guidelines as advisory.

## 2. Explaining the Sentence

Mr. Martinez-Barragan also claims that his sentence was unreasonable because the district court failed to adequately explain the basis for its sentence. A district court must explain its reasons for imposing a sentence. *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1116 (10th Cir. 2006); 18 U.S.C. § 3553(c). When the defendant makes "a nonfrivolous argument for leniency," the district court "must somehow indicate that [it] did not 'rest on the guidelines alone, but

-15-

considered whether the guideline sentence actually conforms, in the circumstances, to the statutory factors.'" *United States v. Jarrillo-Luna*, 478 F.3d 1226, 1230 (10th Cir. 2007) (quoting *Sanchez-Juarez*, 446 F.3d at 1117).  The court must provide only a general statement of its reasons, *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 113 (2007), and need not explicitly refer to either the § 3553(a) factors or respond to "every argument for leniency that it rejects in arriving at a reasonable sentence." *Jarrillo-Luna*, 478 F.3d at 1229; *United States v. A.B.*, 529 F.3d 1275, 1289 (10th Cir. 2008) (noting that "when the district court adheres to the advisory Guidelines range," § 3553(c) does not require a "particularized analysis" of the statutory factors), *cert. denied*, __ S. Ct. __, 2008 WL 4189667, at *1 (Oct. 14, 2008).  A sentence at the low end of the Guidelines range is "a functional rejection" of the defendant's request for a below-Guidelines sentence. *Sanchez-Juarez*, 446 F.3d at 1115.

In *Sanchez-Juarez*, the district court heard defendant's arguments for a downward variance, noted that it had reviewed the PSR's factual findings, considered the Guidelines applications, and cited the defendant's offense conduct. *Id.*  But we observed that, at a minimum, a sentencing court must "'state its reasons for imposing a given sentence.'" *Id.* at 1116 (quoting *United States v. Rose*, 185 F.3d 1108, 1111 (10th Cir. 1999)).  The sentencing court in *Sanchez-Juarez* failed to meet this minimum requirement, as it gave no reasons

for the sentence it imposed and did not mention the § 3553(a) factors at all. *Id.*
at 1115.

The district court's conduct in this case is strikingly different from that in
*Sanchez-Juarez.* As noted previously, the district court clearly considered the §
3553(a) factors in sentencing Mr. Martinez-Barragan. It addressed Mr. Martinez-
Barragan's arguments that his criminal history score exaggerated his future
dangerousness and that he entered the country in order to provide for his family.
The court did not cite specific subsections of § 3553(a), but it is not required to
do so.[3] However, the facts and circumstances that it did consider, *see supra* Part
II(A)(1)(b), are plainly relevant to many of the statutory factors, including the
nature of the offense and the history of the defendant; the need for the sentence
to deter future criminal conduct, protect the public from the defendant, and
provide the defendant with treatment; and "the need to avoid unwarranted
sentencing disparities" among similarly situated defendants. 18 U.S.C. §
3553(a)(1), (2), (6). In fact, we are able to confidently conclude that the district
court did not treat the Guidelines as mandatory, precisely because it properly
explained the basis for its sentence. In sum, the district court has, at the very

---

[3]     Mr. Martinez-Barragan concedes that our decisions in *Ruiz-Terrazas*,
477 F.3d at 1202, and *United States v. Lopez-Flores*, 444 F.3d 1218, 1222 (10th
Cir. 2006), teach that a district court is not required to run through § 3553(a) like
a checklist. However, he merely "wishes to preserve the issue for further
appellate review." Aplt. Br. at 35 n.4.

least, satisfied the requirements of § 3553(c). *Cf. A.B.*, 529 F.3d at 1290 n.18 (where district court "entertain[ed] rather extensive briefing and arguments on whether to vary" and "clearly and expressly identified [the] issues that would affect its decision . . . before it decided to adhere to the advisory Guidelines range" it "arguably may have exceeded" the law's requirements).

### 3.  Parsimony Principle

When crafting a sentence, the district court must be guided by the "parsimony principle"—that the sentence be "sufficient, but not greater than necessary, to comply with the purposes" of criminal punishment, as expressed in § 3553(a)(2).  18 U.S.C. § 3553(a); *see also United States v. Defoor*, 535 F.3d 763, 763 (8th Cir. 2008) (discussing the "'parsimony' doctrine, which provides that the sentence imposed should be the least severe sanction necessary to achieve the purpose of sentencing"); *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 1008) (noting that "section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle," which is "sometimes referred to as the 'parsimony principle'").  In *Begay*, we observed that "[i]n any given case there could be a range of reasonable sentences that includes sentences both within and outside the Guidelines range."  470 F.3d at 975.  However, "a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)."  *United States v. Conlan*, 500

F.3d 1167, 1169 (10th Cir. 2007) (quoting *United States v. Wilms*, 495 F.3d 277, 280 (6th Cir. 2007)).

Mr. Martinez-Barragan argues that the district court erred in seeking to impose a sentence that was merely reasonable, instead of endeavoring to find "the lowest available sentence that would meet the requirements of § 3553(a)(2)." Aplt. Br. at 28. He points out that, in describing its decision-making, the district court noted that it considered and consulted the advisory Guidelines "in assessing the reasonableness of the plea agreement as that agreement, obviously, has the sentence ultimately to be handed down by the Court." R., Supp. Vol. I, Tr. at 10. Although the district court's language could give rise to confusion concerning its sentencing conduct, we are satisfied that the court adhered to the parsimony principle in selecting the appropriate sentence for Mr. Martinez-Barragan.

The record clearly reflects that the district court was aware of its responsibilities under § 3553(a). Its thorough consideration of Mr. Martinez-Barragan's individual circumstances, *see supra* Part II(A)(1)(b), evinces the court's intention to tailor a sentence to him. Its analysis in rejecting Mr. Martinez-Barragan's request for a departure or variance dispels any notion that the court simply failed to consider whether a below-Guidelines sentence was appropriate. And given that Mr. Martinez-Barragan committed multiple misdemeanors and an appalling act of domestic violence, he would be hard-

-19-

pressed to establish that the district court perceived that a lesser sentence would be equally effective in complying with the statutory purposes of sentencing, but nonetheless ignored it in a misguided endeavor to impose a reasonable sentence.

The district court's one ambiguous statement relating to reasonableness is not enough for us to conclude that the district court misunderstood its obligation to impose the least severe sentence. *Cf. United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006) ("For us to hold that a sentence at the bottom of the Guidelines range is invalid under the parsimony clause, we will require a showing considerably clearer than that presented here of the district court's belief that, after taking into account the Guidelines and the considered judgment that they represent, a lower sentence would be equally effective in advancing the purposes set forth in § 3553(a)(2).") (citation and quotation marks omitted). Nor does the district court's selection of a bottom-of-the-Guidelines sentence suggest, without more, that it was focused on finding a reasonable sentence, rather than adhering to the parsimony principle. Accordingly, we reject Mr. Martinez-Barragan's third procedural challenge.

## B. Substantive Reasonableness

Mr. Martinez-Barragan also challenges the substantive reasonableness of his sentence. He did not object to the length of his sentence at the sentencing hearing. "But when the claim is merely that the sentence is unreasonably long, we do not require the defendant to object in order to preserve the issue." *United*

*States v. Torres-Duenas*, 461 F.3d 1178, 1183 (10th Cir. 2006). Rather, we review the length of the sentence for an abuse of discretion. *Gall*, 128 S. Ct. at 597 ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard."). However, we presume a sentence within the correctly-calculated Guidelines range is reasonable. *See Kristl*, 437 F.3d at 1054; *see also Gall*, 128 S. Ct. at 597 ("If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness.") Mr. Martinez-Barragan can rebut the presumptive reasonableness of his sentence by demonstrating its unreasonableness in light of the § 3553(a) factors. *Kristl*, 437 F.3d at 1054. In determining whether the district court properly considered the applicable Guidelines range, we review its legal conclusions de novo and its factual findings for clear error. *Id.*

We, like the district court, are guided by the § 3553(a) factors when determining reasonableness. These factors include:

> the nature of the offense and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training or treatment.

*Id.* at 1053.

Mr. Martinez-Barragan argues that his sentence is unreasonably long because he returned to the United States "in order to provide for his children,"

and because his criminal history was over-represented. Aplt. Br. at 31. The district court was correct to reject these arguments. We have consistently observed that reentry of an ex-felon is a serious offense. *See e.g.*, *Davila-Salvatierra*, 229 F. Appx. at 731. Additionally, as the district court observed, Mr. Martinez-Barragan's felony conviction was quite serious and was committed while he was on probation for three misdemeanors (one of which was a misdemeanor conviction for abusing his wife). The fact that he committed a serious felony while on probation for a number of other offenses left the district court with the impression that Mr. Martinez-Barragan was reckless–perhaps likely to commit further crimes. Under the circumstances, we cannot say that Mr. Martinez-Barragan has demonstrated that his criminal history and family circumstances, when viewed in light of § 3553(a), renders a bottom of the Guidelines sentence an abuse of discretion.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's order imposing sentence on Mr. Martinez-Barragan.