**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 26, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHRISTINE MICHELLE
THOMPSON, a/k/a Christine Michelle
Aguilar, a/k/a Christine Michelle
Zamorsky,

Defendant-Appellant.

No. 10-1404
(D.C. No. 1:09-CR-00208-MSK-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **ANDERSON**, and **HOLMES**, Circuit Judges.

---

Christine Michelle Thompson pleaded guilty to conspiracy and securities

fraud, in violation of 18 U.S.C. §§ 2 and 371 and 15 U.S.C. §§ 77q(a) and 77x.

The district court sentenced her to 57 months of imprisonment, three years of

supervised release, and restitution in the amount of $1.39 million. On appeal,

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Thompson argues the length of her prison sentence is substantively unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

## I. Background

### A. The Offense

A 64-count superseding indictment charged that Ms. Thompson and two of her former husbands, Jesse Anthony Aguilar and Jeffrey Mark Zamorsky, engaged in a fraudulent scheme, conspiring to obtain money from unwitting investors through the sale of fractional interests in bogus oil-and-gas drilling projects. The co-conspirators allegedly negotiated with real oil and gas companies, on the pretense of purchasing interests in real drilling projects, but they completed no such transactions. Through these negotiations, however, Ms. Thompson, Mr. Aguilar, and Mr. Zamorsky obtained proprietary information about existing and potential oil and gas wells. They then used that proprietary information to create fraudulent offering materials for nonexistent drilling projects. Opening sales offices in at least three states, they hired sales representatives to solicit prospective investors in the sham drilling projects. During their two-year conspiracy, from approximately January 2006 until May 2008, over 30 investors fell victim to their fraudulent scheme.

## B.  *The Plea Agreement and Guidelines Calculation*

Although Ms. Thompson initially pleaded not guilty, she ultimately agreed to plead guilty to two counts, conspiracy and securities fraud, and the government agreed to dismiss the remaining 62 counts.  The plea agreement required the government to recommend a sentence at the bottom of the applicable United States Sentencing Guidelines (Guidelines or USSG) imprisonment range, and Ms. Thompson was free to argue for any lawful sentence.  After entry of her guilty pleas, a probation officer prepared a Presentence Investigation Report (PSR), calculating her offense level as 23 and her criminal-history category as III, resulting in a Guidelines range of 57 to 71 months.  Ms. Thompson's criminal-history category was based on her receipt of six criminal-history points.

## C.  *Motion for Downward Departure/Variance*

Ms. Thompson did not object to the Guidelines-range computation in the PSR, but she filed a motion for downward departure or variance from that range. As relevant to this appeal, she argued that her criminal-history category over-represented the seriousness of, and her minor roles in, her previous offenses. Regarding her relative culpability, she presented the district court with a report from Dr. Ann Bortz, a clinical psychologist, diagnosing her with post traumatic stress disorder (PTSD) and severe depression.  Dr. Bortz based her findings on factors including Ms. Thompson's abandonment by her mother, sexual and

physical abuse as a child, substance abuse, and emotional and physical abuse by Mr. Aguilar.

Ms. Thompson argued that the district court should consider her PTSD and depression, coupled with the consequences of Mr. Aguilar's abusive and controlling relationship with her, as contributing and mitigating factors in her criminal history. According to the calculation in the PSR, she was assessed two criminal-history points each for a 2002 felony conviction for fraudulent use of identifying information and a 2004 theft-by-check conviction.[1] Her 2002 felony offense involved her attempt to obtain credit to purchase furniture using a false Social-Security number. She maintained in her motion that Mr. Aguilar was the mastermind behind that scheme and she was his minion. Ms. Thompson asserted that her 2004 conviction stemmed from the financial hardship she faced when Mr. Aguilar, who had been the family's breadwinner, was sent to jail in 2002 after being convicted of a previous fraudulent scheme. She emphasized that the 2004 conviction was based on a bad check she wrote to her children's daycare provider for less than $50. Ms. Thompson argued that her financial hardship also caused her 2002 felony conviction to account for two criminal-history points, rather than one. She explained that she initially received a suspended jail

---

[1]     Ms. Thompson received two points for each of these convictions because she was sentenced to jail terms of at least 60 days. *See* USSG § 4A1.1(b) (2009) (adding two points for each prior sentence of imprisonment of 60 days or more).

sentence for this felony offense,[2] but the series of bad checks she wrote after Mr. Aguilar went to prison led to the revocation of her probationary status and imposition of a one-year jail sentence. Thus, she asked the district court to take into account her financial hardship as a contributing factor to the points assessed for these two offenses and the resulting over-representation of her criminal history.

Ms. Thompson argued further that the district court should deduct the two so-called "recency" points she received under USSG § 4A1.1(e) (2009), based on her commission of the instant offense within two years of her release from prison. She asked the court to take note of the Sentencing Commission's finding, in support of a proposed amendment to the Guidelines eliminating that assessment, that consideration of the recency of a defendant's release from prison in relation to a new offense only minimally improves the ability of a criminal-history score to predict the defendant's risk of recidivism. *See* USSG supp. to app. C, amend. 742 (Nov. 1, 2010). Finally, Ms. Thompson also argued that, because her mental state made her vulnerable to Mr. Aguilar's dominance in relation to her participation in the oil-and-gas scheme, she qualified for a downward departure on the grounds of coercion, duress, and diminished capacity. Based on these

---

[2] Based on her original suspended jail sentence, Ms. Thompson would only have received one point for her 2002 felony false-identification conviction. *See* USSG §§ 4A1.1(c), 4A1.2(a)(3) & 4A1.2(c) (2009).

various arguments, she requested a downward departure from offense level 23 to 19, and a reduction of her criminal-history points from six to three, which would result in a criminal-history category of II. Ultimately, Ms. Thompson asked the court to sentence her to a prison term of 34 months, with home detention or community confinement substituting for half of the incarceration period.

The government opposed the motion for downward departure or variance. Disputing Ms. Thompson's claim that Mr. Aguilar forced her to commit any of her criminal offenses, the government presented evidence from sales representatives she had hired to work in Colorado Springs. They depicted the dominant role she played in implementing and directing the fraudulent oil-and-gas scheme in that office, described her personality as extremely strong and aggressive, and related that she managed her employees through fear and intimidation. The government also presented evidence that, after she parted ways with Mr. Aguilar, Ms. Thompson engaged in a new fraudulent scheme with her most recent husband, Dustin Thompson.

Regarding her criminal-history category, the government argued the evidence showed that Ms. Thompson was an active participant in the false-identification scheme underlying her 2002 felony conviction. Moreover, after receiving a suspended sentence for that offense, she violated the conditions of her probation by failing to report to her probation officer, failing to pay her monthly supervision fees, and failing to perform community service—all in

addition to passing seven bad checks. As to financial hardship being the basis for her 2004 theft-of-check conviction, the government cited her 2001 conviction for the same offense, based on a bad check she wrote in 1999, well before Mr. Aguilar's incarceration in 2002. The government also responded to Ms. Thompson's request for a reduction of the two "recency" points based on the pending Guidelines amendment, noting that amendment was not yet effective, nor had it been designated for retroactive application.

### D. The Sentence

At Ms. Thompson's sentencing hearing, the district court reviewed the PSR and found there were no material disputes regarding the accuracy of the facts stated therein or the calculation of the applicable Guidelines range. The court recapped her previous convictions and the six points assessed, resulting in her criminal-history category of III. The court then addressed her motion for downward departure or variance. As to whether the "recency" points should be deducted, the court declined to apply the reasoning underlying the pending Guidelines amendment in this case, because a deduction of two points would have no affect on Ms. Thompson's criminal-history category: with four points instead of six, she would still be in category III. The district court next considered her claim that she committed her previous offenses as a result of the influence and compulsion of her abusive ex-husband, stating:

I am unpersuaded. There is a lengthy criminal history here that has components of a pattern of deception and deception that arises in a number of different contexts: deception in the form of bad checks, deception in the form of misrepresentations of information, deception in the form of theft. Deception.

Now, if there had been evidence that every single one of these instances had been compelled by the direction or the force of one of Ms. Thompson's partners, I might be persuaded that she had been over-reached and her criminal history category is too high. But there hasn't been that evidence. And in addition, what is particularly telling to me is that in her felony conviction, she was given a very generous sentence and she did not complete the requirements on that sentence. She didn't pay what she was supposed to pay, she didn't report, and she didn't engage in community service as she was required to.

Now, what that indicates to me is a series of choices. And while I have no doubt about the information provided by the psychologist who has examined her and the diagnosis that the psychologist has reached, I do not believe that bears upon her criminal history such that the Criminal History Category III significantly overstates the seriousness of her criminal conduct or her likelihood of engaging in recidivism.

R., Vol. 3 at 252-53. The district court further concluded that the evidence did not support a finding of coercion, duress, or diminished capacity with respect to Ms. Thompson's participation in the instant offense. The court observed that the fraudulent oil-and-gas scheme involved a pattern of conduct continuing over a number of years, as opposed to a single choice or incident that took place while she was emotionally overwhelmed.

The district court next addressed the nature of the offense and Ms. Thompson's history and characteristics, as required by 18 U.S.C. § 3553(a).

While the court indicated it did not doubt her injuries, her doctor's diagnosis of her mental conditions, or her need for treatment, it concluded those factors did not make her less culpable in the oil-and-gas scheme. After noting the seriousness of that offense, based on the number of people Ms. Thompson had injured, the court denied her request for variance or departure and imposed a bottom-of-the-Guidelines sentence of 57 months of imprisonment.

## II. Discussion

### A. *Substantive Reasonableness*

Ms. Thompson does not challenge on appeal the district court's calculation of her applicable Guidelines imprisonment range. Her sole contention is that her 57-month term of imprisonment is substantively unreasonable under the totality of the circumstances. "A sentence is substantively reasonable when the length of the sentence reflects the gravity of the crime and the § 3553(a) factors as applied to the case." *United States v. Martinez-Barragan*, 545 F.3d 894, 898 (10th Cir. 2008) (quotation omitted). The § 3553(a) factors include "the nature of the offense and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training or treatment." *Id.* at 905 (quotation omitted).

In reviewing a criminal sentence for substantive reasonableness, "[w]e afford substantial deference to the district court." *United States v. Martinez*,

610 F.3d 1216, 1227 (10th Cir.) (quotation and brackets omitted), *cert. denied*, 131 S. Ct. 543 (2010). Moreover, if the district court imposed a sentence within the correctly calculated applicable Guidelines range, we presume the sentence is reasonable. *United States v. Regan*, 627 F.3d 1348, 1352 (10th Cir. 2010), *petition for cert. filed*, __ U.S.L.W. __ (U.S. April 11, 2011) (No. 10-10065). "[T]o overcome the presumption of reasonableness, an appellant must demonstrate that the district court abused the discretion afforded to it by Congress in sentencing under . . . § 3553." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable. We will reverse the district court's determination only if the court exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *Regan*, 627 F.3d at 1352 (citations and quotations omitted). A district court also abuses its discretion when it bases its decision on clearly erroneous factual findings or erroneous conclusions of law. *McComb*, 519 F.3d at 1054.

### B. *Ms. Thompson's Contentions*

Ms. Thompson first contends that criminal-history category III over-represents her modest criminal history, in light of the circumstances of her life at the time she committed her previous offenses and the minimal harm she caused. As she did in the district court, she argues that Mr. Aguilar was the mastermind behind her 2002 felony false-identification conviction. She further

-10-

asserts that all six of her criminal-history points were based upon the same conduct, namely the issuance of seven small insufficient-funds checks in 2002, at a time when she was experiencing financial hardship due to Mr. Aguilar's incarceration. She repeats the same arguments she made in the district court, tying the four criminal-history points assessed for her 2002 and 2004 convictions to her spate of bad checks. She now also contends that the bad checks effectively accounted for the two additional "recency" points she received as well.[3] According to Ms. Thompson, were it not for the bad checks, her probation would not have been revoked on her 2002 conviction, she would not have received a one-year prison sentence beginning in 2004, and she would not have been released from prison only a short time before commencing the fraudulent oil-and-gas scheme in 2006. Thus, she maintains that the bad checks were unfairly triple-counted in calculating her criminal-history score, making her sentence at the bottom of the resulting Guidelines range substantively unreasonable. Ms. Thompson contends it would be reasonable to assess her two points for her 2002 conviction, or two points for her 2004 conviction, or two

---

[3]     Ms. Thompson concedes on appeal that the district court's ruling on the recency-points issue under USSG § 4A1.1(e) (2009) "well may have been correct," but she contends that it "missed the bigger picture" because the recency of the instant offense was "inextricably connected" to her bad checks offenses. Aplt. Opening Br. at 18 n.4.

points for recency, but the district court's triple-counting of minor bad-check offenses was manifestly unreasonable.

Ms. Thompson argues further that the district court gave insufficient consideration to the nature and seriousness of the instant offense and her history and characteristics. She contends there is substantial and compelling evidence that Mr. Aguilar dominated and controlled her during a time when she was suffering from mental and emotional impairments—that he was both the mastermind of the oil-and-gas scheme and the puppet master to her minion role in the offense. Based on the totality of the circumstances, Ms. Thompson contends that her 57-month sentence amounts to an abuse of discretion.

## C. *No Abuse of Discretion*

Although Ms. Thompson was not required to object to the length of her sentence in the district court, in order to preserve that argument for appeal, *see Martinez-Barragan*, 545 F.3d at 905, she did raise below essentially the same arguments she makes in this court. The district court rejected her assertions as grounds for granting her a downward departure or variance from the applicable Guidelines range. The court found that her series of offenses indicated a pattern of deception, and the evidence was insufficient to show that her criminal conduct was compelled by Mr. Aguilar. As to her theory that all of her criminal-history points unfairly stemmed from the bad checks she wrote during a period of financial hardship, the district court was not persuaded. The court noted that

-12-

Ms. Thompson was given an opportunity to avoid a prison sentence for her 2002 felony conviction, but she chose not to comply with the requirements of her probation. Although she does not dispute that she violated other conditions of her probation, she argues that these violations were "minor or technical" as compared to her bad checks. Aplt. Opening Br. at 15 n.3. The district court concluded otherwise.

The district court did not completely discount Ms. Thompson's claims regarding her psychological conditions and her abusive relationship with Mr. Aguilar. As she acknowledges, the court took these factors into account in sentencing her at the low end of the Guidelines range. She argues, however, that the district court did not give *adequate* consideration to the evidence of Mr. Aguilar's coercion and intimidation of her. Ms. Thompson's argument is nothing more than an invitation to this court to reweigh the § 3553(a) factors. This we cannot do.

> We may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo. Instead we must give due deference to the district court's decision that the § 3553(a) factors, [as] a whole, justify the sentence imposed.

*United States v. Alvarez-Bernabe*, 626 F.3d 1161, 1165 (10th Cir. 2010) (quotations, alteration and brackets omitted). The district court considered and weighed Ms. Thompson's history of deceptive behavior, the seriousness of the instant offense, and her psychological conditions and needs. She has not shown

that the district court made clearly erroneous factual findings or committed legal error, or that its decision falls outside of the bounds of permissible choice under the totality of the circumstances. Thus, we cannot say Ms. Thompson has overcome the presumption of reasonableness by demonstrating that her criminal history and her mental and emotional conditions, when viewed in light of the § 3553(a) factors, render her bottom-of-the-Guidelines sentence an abuse of discretion.

      The judgment of the district court is AFFIRMED.

                          Entered for the Court


                          Jerome A. Holmes
                          Circuit Judge

10-1404, *U.S. v. Thompson*
**O'BRIEN**, J concurring.

I join the Order and Judgment, but write separately to commend the district court for its resolve[1] in imposing condign punishment. It appears Thompson is a confirmed grifter.[2] Between January 2006 and May 2008 she and her confederates obtained about $1,661,495 from "investors" and returned approximately $191,700 to those "investors."[3] Fleecing the lambs was accomplished by lying, cheating and stealing.

And true to the grifter's art, when called to account Thompson resorted to familiar tactics: first, deny; if denial is unavailing then minimize; if that fails then blame others, offer excuses, and, finally, marshal chutzpah and make an unflattering appeal for mercy. It worked in the past,[4] but the district court would

---

[1] "I would invoke those who fill the seats of justice, and all who minister at her altar, that they execute the wholesome and necessary severity of the law." Daniel Webster. Abraham Hayward, *Forensic Eloquence of America. – Webster's Speeches*, Vol. XII THE LAW MAGAZINE OR QUARTERLY REVIEW OF JURISPRUDENCE, Aug. 1834, Art. VIII, at 136.

[2] This case was preceded by other fraud offenses as detailed in the Order & Judgment. The presentence investigation reports four aliases used by Thompson.

[3] On February 1, 2010, a default judgment was entered against the defendant in United States District Court, District of Colorado, Civil Action No. 08-cv-01088-MSK-CBS, for $1,373,995, "representing profits gained as a result of the conduct alleged in the Complaint, together with[ ]prejudgment interest thereon in the amount of $90,468.53 and civil penalties in the amount of $150,000.00." In this case she was also ordered to make restitution. Fat chance. The "investors" are left to lick their wounds.

[4] She was well schooled by a history of lenient treatment.

have none of it here, resulting in this improbable appeal. The Order and Judgment concludes the sentence imposed was not an abuse of discretion. I would go further. Thompson received perhaps less, but certainly not more, than she deserved.