**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

DANIEL PHILLIP MAESTAS,

　　Defendant - Appellant.

No. 24-2110
(D.C. No. 2:20-CR-01189-MIS-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **McHUGH**, and **FEDERICO**, Circuit Judges.
_____

　　Defendant–Appellant Daniel Phillip Maestas violated the terms of his supervised release and was sentenced to 24 months of imprisonment for doing so. On appeal, Mr. Maestas argues his sentence is substantively unreasonable. We hold that the district court did not abuse its discretion by sentencing Mr. Maestas to an above-Guidelines sentence. Accordingly, we affirm.

---

　　[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

I.    BACKGROUND

On February 21, 2020, Mr. Maestas was arrested by New Mexico State Police for transporting persons who were in the country illegally. Mr. Maestas was charged in the U.S. District Court for the District of New Mexico with one count of conspiracy to transport illegal aliens and one count of transporting illegal aliens. On May 5, 2020, he pleaded guilty to both charges. Mr. Maestas was sentenced to 21 months of imprisonment and three years of supervised release.

Mr. Maestas's supervised release was thereafter revoked three times, each time for substance abuse or possession. First, on March 3, 2022, Mr. Maestas's probation was revoked after he pleaded guilty to violating probation conditions, and he was sentenced to 14 months in custody and 22 months of supervised release. Second, on August 10, 2023, his probation was again revoked after he pleaded guilty to violating probation conditions, and he was sentenced to 10 months in custody and 12 months of supervised release. The third probation revocation is the subject of this appeal.

After he was released from custody for the second probation revocation and placed back on probation, Mr. Maestas was ordered to participate in an in-patient substance-abuse program. He was quickly dismissed from the program, however, for bringing Suboxone with him to the treatment facility and for refusing to take mandatory drug tests. After that dismissal, Mr. Maestas did not update his probation officer with his location. The probation officer filed a petition to revoke supervised release, and Mr. Maestas was subsequently arrested for violating the conditions of

probation. On July 30, 2024, Mr. Maestas pleaded guilty to violating the terms of probation—his third probation revocation.

The recommended sentencing range for this probation revocation was 8 to 14 months, in accordance with the U.S. Sentencing Commission Guidelines. Relevant to this sentencing range was Mr. Maestas's extensive criminal history that included at least seventeen convictions. This criminal record includes, *inter alia*, three convictions for residential burglary, three convictions for possession of a controlled substance, and four convictions for assault or battery on a household member. Mr. Maestas's last conviction involving a violent crime was in 2015, when he was convicted for conspiracy to commit armed robbery.

At the beginning of the sentencing hearing, the district court notified the parties that it was considering an upward variance from the Guidelines range. In response, Mr. Maestas, his probation officer, and the Government all requested a sentence within the Guidelines range. The probation officer requested a sentence at the high end of the range, expressing that Mr. Maestas "has the tools" to succeed outside of prison but needs "more time in custody [to] help him change his life." ROA Vol. III at 10. The Government stated it "would defer to Probation" regarding the sentence. *Id.* And Mr. Maestas's counsel requested a sentence of 12 months and one day.

Mr. Maestas also spoke with the court and stated that additional prison time would make it harder to overcome his addictions because "it's easier to get [drugs in prison] than it is out here." *Id.* at 13. He explained that the prison treatment programs

in which he had participated were ineffective because they "are not intensive." *Id.* at 18. And Mr. Maestas noted he had not committed a violent crime since 2015. He stated, "I've outgrown everything in my past. I've done so much to change my life and try to be a better man, not only for me but for my family." *Id.* at 14–15.

The district court acknowledged Mr. Maestas's difficulties with rehabilitation in prison treatment programs, but it also noted he had been equally unsuccessful with treatment programs outside of prison. The court also explained that, while Mr. Maestas had not committed a violent crime since 2015, his addiction might still cause him "to commit scary or dangerous crimes in the community." *Id.* at 15.

Ultimately, the district court imposed a sentence of 24 months in custody. The district court noted it did not "have any supervised release [time] left to give[,] so a term of supervised release will not be imposed." *Id.* at 25.

In explaining the sentence, the court considered the sentencing factors at 18 U.S.C. § 3553(a). The court discussed all seventeen of Mr. Maestas's previous convictions, many of which were violent in nature. The court found Mr. Maestas's cumulative "history and characteristics [were] very serious and necessitat[ed] an upward variance." *Id.* at 22. The court also found an upward variance would promote the penological goals of public safety, deterrence, and rehabilitation. It further stated it had considered "the kinds of sentences available and the Guideline[s] range," along with any applicable "policy statements by the United States Guidelines regarding supervised release violations." *Id.* at 24. And the court noted neither party had made any arguments about sentencing disparities caused by an above-Guidelines sentence,

but that if there was any disparity, it was "warranted by all the factors [the court] just went over, especially the long criminal history." *Id.*

Mr. Maestas timely appealed his sentence to this court.

## II.    JURISDICTION

The district court had jurisdiction over the case under 18 U.S.C. § 3231. We have jurisdiction over Mr. Maestas's appeal under 28 U.S.C. § 1291.

## III.    STANDARD OF REVIEW

"We review a district court's sentencing decision for substantive reasonableness under an abuse-of-discretion standard, looking at the totality of the circumstances." *United States v. Cookson*, 922 F.3d 1079, 1090 (10th Cir. 2019) (internal quotation marks omitted). A district court abuses its discretion if "the sentence exceed[s] the bounds of permissible choice, such that the sentence is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Gross*, 44 F.4th 1298, 1302 (10th Cir. 2022) (internal quotation marks omitted). In reviewing a sentence, "we give due deference to the district court's decision that the § 3553(a) factors, on [the] whole, justify the extent of the variance." *Cookson*, 922 F.3d at 1090–91 (alteration in original) (internal quotation marks omitted).

At the same time, reasonableness review "must not be regarded as a rubber stamp." *United States v. Pinson*, 542 F.3d 822, 836 (10th Cir. 2008). When a district court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007).

5

A major variance thus "should be supported by a more significant justification than a minor one." *Id.* And "closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect § 3553(a) considerations' even in a mine-run case." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (citation omitted).

Here, Mr. Maestas, his probation officer, and the Government all requested a within-Guidelines sentence. However, the district court exercised its discretion to vary upwards from the Guidelines range of 8 to 14 months, imposing a sentence of 24 months. This major variance from 14 months to 24 months must be supported by a "significant justification." *Gall*, 552 U.S. at 50.

## IV.   ANALYSIS

The district court did not abuse its discretion by imposing an above-Guidelines sentence. Mr. Maestas makes a number of arguments as to why his sentence is substantively unreasonable, which we address in turn.

First, Mr. Maestas argues his sentence is substantively unreasonable because the district court failed to explain why the upward variance was sufficient, but not greater than necessary, to accomplish the purposes of § 3553(a). "When crafting a sentence, the district court must be guided by the 'parsimony principle'—that the sentence be 'sufficient, but not greater than necessary, to comply with the purposes' of criminal punishment, as expressed in § 3553(a)(2)." *United States v. Martinez-Barragan*, 545 F.3d 894, 904 (10th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). We have declined to find sentences substantively unreasonable under the parsimony

principle if "[t]he record clearly reflects that the district court was aware of its responsibilities under § 3553(a)" and demonstrates "the court's intention to tailor a sentence to" the defendant. *Id.*

Here, the district court considered all the § 3553(a) factors and explained how those factors justified an upward variance. ROA Vol. III at 20–24. The court gave consideration to Mr. Maestas's unique circumstances, including his history of recidivism and his criminal history caused by a long-standing drug addiction. Nothing in the record indicates that the district court believed the 24-month sentence was "greater than necessary" to satisfy the goals of sentencing listed at § 3553(a)(2). *See, e.g.*, *Martinez-Barragan*, 545 F.3d at 904 (holding that the record did not indicate "that the district court misunderstood its obligation to impose the least severe sentence"). Rather, the court explained how each § 3553(a) factor was implicated in this case and pronounced the sentence it believed to be appropriate. This mere exercise of discretion does not violate the parsimony principle.

Second, Mr. Maestas argues the district court abused its discretion by insufficiently considering two statutory factors—the kinds of sentence and the applicable Guidelines range, § 3553(a)(4), and general deterrence, § 3553(a)(2)(B). District courts are required to consider each factor under § 3553(a), but they are not required to give equal weight to each factor. *See Gross,* 44 F.4th at 1305. The district court expressly stated it had considered "the kinds of sentences available and the Guideline[s] range." ROA Vol. III at 24. Mr. Maestas does not point to anything in the record indicating that the district court misapprehended or miscalculated the

Guidelines range. Nor does he point to anything about his Guidelines calculation that is unusually relevant to whether an outside-Guidelines sentence was warranted.[1] *See United States v. Lente*, 759 F.3d 1149, 1163 (10th Cir. 2014) (affirming a district court's decision to vary upwards because the Guidelines range did not adequately account for the offense conduct). Mr. Maestas's argument that the district court insufficiently considered the Guidelines range and other types of sentences available reflects his disagreement with the district court's weighing of the § 3553(a) factors. *See United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018) ("[N]o algorithm exists that instructs the district judge how to combine the factors or what weight to put on each one."). Absent any reason why the district court unreasonably analyzed those factors, we give due deference to the weight the district court assigned to them. *Cookson*, 922 F.3d at 1090–91.

Mr. Maestas similarly argues the district court did not sufficiently analyze whether an upward variance would promote the sentencing goal of general deterrence under § 3553(a)(2)(B). Mr. Maestas bases this argument on *United States v. Crosby*,

---

[1] Mr. Maestas does argue that the district court's imposition of a variance on account of his criminal history and recidivism risk was unreasonable because the Guidelines range already accounts for both considerations. But it is well established that a district court does not abuse its discretion by varying from the Guidelines range because of facts already accounted for within the Guidelines. *United States v. Barnes*, 890 F.3d 910, 921 (10th Cir. 2018) (explaining that district courts "have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory [G]uidelines range" (quotation marks omitted)). The district court reasonably concluded that Mr. Maestas's lengthy criminal history and repeated probation violations indicated a higher-than-usual chance of recidivism.

119 F.4th 1239 (10th Cir. 2024), in which we held a sentence was substantively unreasonable because the district court failed to consider several relevant factors, including general deterrence. *Id.* at 1251. The defendant in *Crosby* was charged for possessing visual depictions of prepubescent minors engaged in sexually explicit conduct. *Id.* at 1243–44. The defendant's Guidelines range was 78 to 97 months, but the district court varied downwards to "five days or time served, whichever is less," and fifteen years of supervised release. *Id.* at 1244.

*Crosby* is distinguishable because the degree of variance was notably greater. When a court imposes a sentence outside the Guidelines range, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 522 U.S. at 50. In *Crosby,* the degree of variance from 78 months at the low end of the range to five days of incarceration was such a drastic variance that it warranted a more compelling justification. 119 F.4th at 1249–51. Here, the Guidelines range for Mr. Maestas was 8 to 14 months, and the district court pronounced a sentence of 24 months. Although a 10-month variance is significant, it is not as drastic as the 78-month variance in *Crosby*. *See Crosby*, 119 F.4th at 1250 (noting the district court's failure to discuss general deterrence was "particularly problematic where the district court deviated so far from the Guidelines range").

Additionally, the factor of general deterrence is less implicated here than in *Crosby*. Unlike *Crosby*, nothing indicates that the goal of deterrence was underserved by the upward variance the district court imposed. *Cf. Crosby*, 119 F.4th at 1250.

This is not a case in which the district court "apparently dismissed the relevance" of general deterrence, *United States v. Walker*, 844 F.3d 1253, 1257 (10th Cir. 2017), nor one in which the district court placed unreasonable weight on general deterrence or another factor. Although the district court was required to "to consider the appropriate factors" at sentencing, "we do not require ritualistic incantations of magic words to demonstrate compliance with this requirement." *United States v. Penn*, 601 F.3d 1007, 1011 (10th Cir. 2010) (internal quotation marks omitted). Accordingly, the district court did not abuse its discretion by failing to spell out how the goal of general deterrence was served by this upward variance.

Third, Mr. Maestas argues the upward variance is not justified by the "nature and circumstances" of his offense because he only violated probation on account of "his struggle with addiction." Appellant's Br. at 19. Although Mr. Maestas indisputably has a history of addiction, the district court was reasonably concerned that this addiction was "causing [him] to commit scary or dangerous crimes in the community." ROA Vol. III at 15. This concern was bolstered by Mr. Maestas's criminal record: he has frequently broken the law because of his addiction. And Mr. Maestas's conduct underlying this probation revocation shows he was unable to control his behavior when out of custody—he attempted to bring Suboxone into his treatment program and refused to submit to a drug test. This behavior—which was similar to the conduct underlying his other probation revocations—illustrates that Mr. Maestas was highly likely to reoffend once he was released from custody, indicating a risk to the public and himself. *See Pinson*, 542 F.3d at 838 (affirming a

10

major upward variance when the defendant's offense conduct and past conduct indicated he "pose[d] an actual danger to the public"). Mr. Maestas's addictive behavior was clearly relevant to his "history and characteristics" under § 3553(a)(1), especially absent any "signs of recovery" indicating that he no longer poses a threat to the public. *Lente*, 759 F.3d at 1173. Thus, the district court reasonably found this factor cuts towards an upward variance.

Fourth and finally, Mr. Maestas argues his personal characteristics and history do not provide an adequate basis to vary upwards because the Guidelines instruct courts to consider the criminal history and initial offense committed by a probation violator only "to limited degree." Appellant's Br. at 20 (quoting U.S.S.G. Ch. 7, Pt. A, 3(b)). To be sure, the Guidelines instruct that "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *United States v. Steele*, 603 F.3d 803, 809 (10th Cir. 2010) (quoting U.S.S.G. Ch. 7, Pt. A, 3(b)). However, this provision is "grounded in the common understanding that the district court may impose any sentence within the statutory maximum." *United States v. Vigil*, 696 F.3d 997, 1002 (10th Cir. 2012) (quotation marks omitted). And "blatant, repeated violations of the conditions of [] probation" constitute a severe breach of trust that justify an above-Guidelines sentence. *Id.*; *see also Steele*, 603 F.3d at 809 ("[R]ecidivism is generally a reason for increased sentencing severity."). Here, the district court explicitly tied the sentence to Mr. Maestas's breach of trust, noting that he "absconded from treatment very quickly

11

after arriving." ROA Vol. III at 21. And the court discussed how Mr. Maestas continues to breach trust by engaging in illegal drug use, despite his original sentence and "his supervised release sentences." *Id.* at 23. The record does not show that the district court abused its discretion by sentencing Mr. Maestas *solely* on account of his extensive criminal history—the sentence was grounded in the breach of trust represented by Mr. Maestas's repeated probation violations.

In sum, Mr. Maestas has not established that the district court abused its discretion by pronouncing an above-Guidelines sentence of 24 months.

## V.    CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Maestas's sentence.

Entered for the Court


Carolyn B. McHugh
Circuit Judge